JOURNAL ENTRY and OPINION
{¶ 1} Defendants-appellants, Kenneth Crookston, Elizabeth Feeney, Joan Todd, Allan Sowell, and Cuyahoga County Department of Children and Family Services ("appellants"), appeal from the trial court's decision. Having reviewed the arguments of the parties and the pertinent law, we hereby reverse and remand.
 I. {¶ 2} According to the facts in the case sub judice, Christine Sobiski, D.D.S., L.S.W. ("appellee"), was in the process of adopting two boys, one through Cuyahoga County Department of Children and Family Services ("CCDCFS") and the other through Adoption by Gentle Care in Franklin County, Ohio. However, the case at bar only involves the adoption of the child through CCDCFS. Appellee and her husband, Terry Reed, acted as foster parents and wanted to adopt the children. At the time, both children were under a year old and had special needs. The child being adopted through CCDCFS had particular gastric needs which appellee managed.
 {¶ 3} As was admitted in the complaint, while acting as foster parents, a domestic violence situation occurred at the Sobiski foster home. Subsequently, the county removed the foster child, and appellee sued the county and four of its employees for money damages. The county and its employees asserted their immunity before this court.
 {¶ 4} Appellee filed her complaint on July 16, 2003. She had voluntarily dismissed her previous complaint. Appellants moved to dismiss the refiled complaint on grounds that included immunity. The court denied the motion by order dated December 17, 2003. The pertinent section of R.C. 2744.02, "classification of functions of political subdivisions; liability; exceptions" regarding final orders, states the following:
{¶ 5} "(C) An order that denies a political subdivision or anemployee of a political subdivision the benefit of an allegedimmunity from liability as provided in this chapter or any otherprovision of the law is a final order."
 {¶ 6} In the case at bar, the order denying the motion to dismiss merely noted that the motion was denied, without further explanation. On January 13, 2004, appellants filed their notice of appeal.
 II. {¶ 7} Because of the substantial interrelation between appellants' assignments of error and for the sake of judicial economy, we will address appellants' assignments of error together.
 {¶ 8} Appellants' first assignment of error states: "The trial court erred by overruling immunity, under Chapter R.C. 2744, of defendant, identified as Cuyahoga County Department of Children and Family Services."
 {¶ 9} Appellants' second assignment of error states: "The trial court erred by overruling immunity, under Chapter R.C. 2744, of defendant, Elizabeth Feeney (identified in the complaint as `Libbey Feeney')."
 {¶ 10} Appellants' third assignment of error states: "The trial court erred by overruling immunity, under Chapter R.C. 2744, of defendant, Kenneth Crookston."
 {¶ 11} Appellants' fourth assignment of error states: "The trial court erred by overruling immunity, under Chapter R.C. 2744, of defendant, Allan Sowell."
 {¶ 12} Appellants' fifth assignment of error states: "The trial court erred by overruling immunity, under Chapter R.C. 2744, of defendant, Joan Todd."
 {¶ 13} The standard of review on a Civ.R. 12(B)(6) motion to dismiss, which raises questions of law, is de novo. Hunt v.Marksman Prods. (1995), 101 Ohio App.3d 760.
 {¶ 14} In the case at bar, the foster child was removed from the home of appellee and her husband following a domestic violence situation.[1] Appellee admits that an incident occurred in her home and that her husband was arrested following the incident.[2] Appellee's complaint states that "on or about 29 January 2003, Dr. Sobiski was struck by Mr. Terry Reed (her now estranged husband) in an act of domestic violence."[3] The county, without objection from appellee, entered into the record a certified copy of a complaint filed by appellee's husband with the domestic relations court in Case No. DV 03 291088. However, in the court filing, Reed stated that he was the victim of domestic violence perpetrated by appellee.[4] For purposes of this appeal, these issues are not material. They are mentioned simply to illustrate some of the complex factors facing county child protection workers in this case.
 {¶ 15} The foster parents in this case were not without recourse. As a foster parent, appellee could have requested permission from the juvenile court to intervene as a party. The determination as to such request for intervention is within the juvenile court's discretion. While a foster parent is not automatically entitled to party status, the court has wide discretion to name parties to a juvenile court action, and this discretion includes naming foster parents as parties. In reZhang (1999), 135 Ohio App.3d.
 {¶ 16} Moreover, the foster parents could have petitioned the juvenile court to challenge the placement change. Other disappointed foster parents have filed such motions with a juvenile court. In re Moorehead (1991), 75 Ohio App.3d 711,719. R.C. 2151.353(E)(2) allows any party, other than the parents whose parental rights have been terminated, to move for an order modifying or terminating any dispositional order, including an award of permanent custody. In re G.R., Cuyahoga App. No. 83146, 2004-Ohio-999.
 {¶ 17} As previously stated, the key issue in this case is immunity. The Political Subdivision Tort Liability Act, R.C. 2744 et seq., sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. R.C.2744.02(A) sets forth the general rule of immunity that political subdivisions are not liable in damages for the personal injuries or death of a person. Cater v. City of Cleveland (1998),83 Ohio St.3d 24.
 {¶ 18} Under R.C. 2744.01(F),[5] a county is a political subdivision, and the operation of a county human services department is a governmental function. R.C.2744.01(C)(2)(m);[6] Jackson v. Butler County Bd. of County Commrs. (1991), 76 Ohio App.3d 448.
 {¶ 19} The Ohio immunity statute provides a three-tiered analysis for determining whether or not a political subdivision or its employees have immunity. First, R.C. 2744.02(A)(1) confers on all political subdivisions a blanket immunity which provides that they are not liable for injury, death or loss to persons or property that occurred in relation to the performance of a governmental or proprietary function. Second, R.C. 2744.02(B) lists five exceptions to this blanket immunity. Marshall v.Montgomery County Children Servs. Bd. (Mar. 31, 2000), Montgomery App. No. 17856. Finally, if one of the exceptions to immunity is found to apply, R.C. 2744.03 lists several defenses or immunities to liability for both the political subdivision and its employees. However, the defenses in R.C. 2744.03 do not come into play unless liability attaches under one of the exceptions in R.C. 2744.02(B). Cater v. Cleveland (1998),83 Ohio St.3d 24, 28.
 {¶ 20} Under the first tier of the analysis, the court must consider whether immunity is established pursuant to R.C.2744.02(A)(1). "Classification of functions of political subdivisions; liability; exceptions" provides the following:
{¶ 21} "(A)(1) For the purposes of this chapter, the functionsof political subdivisions are hereby classified as governmentalfunctions and proprietary functions. Except as provided indivision (B) of this section, a political subdivision is notliable in damages in a civil action for injury, death, or loss toperson or property allegedly caused by any act or omission of thepolitical subdivision or an employee of the politicalsubdivision in connection with a governmental or proprietaryfunction."
 {¶ 22} (Emphasis added.)
 {¶ 23} The exceptions are set forth in R.C. 2744.02(B)(1) which provides the following:
{¶ 24} "(1) Except as otherwise provided in this division,political subdivisions are liable for injury, death, or loss toperson or property caused by the negligent operation of any motorvehicle by their employees when the employees are engaged withinthe scope of their employment and authority. The following arefull defenses to that liability:
 {¶ 25} "(a) A member of a municipal corporation policedepartment or any other police agency was operating a motorvehicle while responding to an emergency call and the operationof the vehicle did not constitute willful or wanton misconduct;
 {¶ 26} "(b) A member of a municipal corporation firedepartment or any other firefighting agency was operating a motorvehicle while engaged in duty at a fire, proceeding toward aplace where a fire is in progress or is believed to be inprogress, or answering any other emergency alarm and theoperation of the vehicle did not constitute willful or wantonmisconduct;
 {¶ 27} "(c) A member of an emergency medical service owned oroperated by a political subdivision was operating a motor vehiclewhile responding to or completing a call for emergency medicalcare or treatment, the member was holding a valid commercialdriver's license issued pursuant to Chapter 4506. or a driver'slicense issued pursuant to Chapter 4507. of the Revised Code, theoperation of the vehicle did not constitute willful or wantonmisconduct, and the operation complies with the precautions ofsection 4511.03 of the Revised Code.
 {¶ 28} "(2) Except as otherwise provided in sections 3314.07and 3746.24 of the Revised Code, political subdivisions areliable for injury, death, or loss to person or property caused bythe negligent performance of acts by their employees with respectto proprietary functions of the political subdivisions.
 {¶ 29} "(3) Except as otherwise provided in section 3746.24 ofthe Revised Code, political subdivisions are liable for injury,death, or loss to person or property caused by their negligentfailure to keep public roads in repair and other negligentfailure to remove obstructions from public roads, except that itis a full defense to that liability, when a bridge within amunicipal corporation is involved, that the municipal corporationdoes not have the responsibility for maintaining or inspectingthe bridge.
 {¶ 30} "(4) Except as otherwise provided in section 3746.24 ofthe Revised Code, political subdivisions are liable for injury,death, or loss to person or property that is caused by thenegligence of their employees and that occurs within or on thegrounds of, and is due to physical defects within or on thegrounds of, buildings that are used in connection with theperformance of a governmental function, including, but notlimited to, office buildings and courthouses, but not includingjails, places of juvenile detention, workhouses, or any otherdetention facility, as defined in section 2921.01 of the RevisedCode.
 {¶ 31} "(5) In addition to the circumstances described indivisions (B)(1) to (4) of this section, a political subdivisionis liable for injury, death, or loss to person or property whencivil liability is expressly imposed upon the politicalsubdivision by a section of the Revised Code, including, but notlimited to, sections 2743.02 and 5591.37 of the Revised Code.Civil liability shall not be construed to exist under anothersection of the Revised Code merely because that section imposes aresponsibility or mandatory duty upon a political subdivision,because that section provides for a criminal penalty, because ofa general authorization in that section that a politicalsubdivision may sue and be sued, or because that section usesthe term `shall' in a provision pertaining to a politicalsubdivision."
 {¶ 32} (Emphasis added.)
 {¶ 33} Under the third tier of the analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies.Cater v. Cleveland, supra. R.C. 2744.03(A)(5) provides in relevant part:
{¶ 34} "(5) The political subdivision is immune from liabilityif the injury, death, or loss to person or property resulted fromthe exercise of judgment or discretion in determining whether toacquire, or how to use, equipment, supplies, materials,personnel, facilities, and other resources unless the judgment ordiscretion was exercised with malicious purpose, in bad faith,or in a wanton or reckless manner."
 {¶ 35} (Emphasis added.)
 {¶ 36} In the case at bar, none of the second tier exceptions apply and the third tier is inapplicable as well.
 {¶ 37} However, assuming arguendo that the analysis had progressed to the third tier, it would have failed. This is because there was no malicious, bad faith, or reckless conduct demonstrated by appellants. The foster child in the case at bar was removed from the home of appellee only after an extensive evaluation and consideration on the part of CCDCFS and its employees. Both parties acknowledged that the child was only removed subsequent to a domestic violence incident. Appellee admits that an incident occurred in her home and that her husband was arrested following the incident. A "safety plan" was developed by CCDCFS, and the county later inspected the home where appellee was residing following the domestic violence.
 {¶ 38} On February 3, 2004, a staffing meeting was held and CCDCFS decided to remove the foster child from the care of appellee. The county recommended that the approved home study for appellee be rescinded and deemed invalid. Later, without objection from appellee, the county entered into the record a certified copy of a complaint filed by appellee's husband with the domestic relations court in Case No. DV 03 291088. In this filing, Reed stated that he was the victim of domestic violence. It is only after the safety plan, the home inspection, the staffing meeting, the domestic violence incident, and other criteria that CCDCFS decided to remove the child from appellee foster parent.
 {¶ 39} The removal of a child from its current care giver, even in a foster parent situation, is a painful and contentious event. Emotions are high and people are vulnerable. The end result of such a custody situation is that one party will not obtain the result it desires. While this court is sensitive to appellee's situation, the evidence in the record indicates that statutory immunity applies, without exception, in this case. Furthermore, the evidence does not demonstrate any malice or wrongdoing on the part of appellants.
 {¶ 40} This case would have been better served in probate court. However, that being said, we find merit with appellants' arguments. We find that the trial court erred, as to all appellants, when it overruled appellants' motion. The evidence in the case at bar demonstrates that immunity applies under R.C. 2744 and none of the statutory exceptions apply. CCDCFS and its employees did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. Furthermore, finding individual CCDCFS' employees liable for engaging in proper daily activities inherent in their CCDCFS job duties would be contrary to public policy and result in an undesired chilling effect.
 {¶ 41} Appellants' five assignments of error are sustained.
Judgment is reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of
Appellate Procedure.
Celebrezze, JR., P.J., Concurs;
Karpinski, J., Dissents with separate Dissenting Opinion.
[1] Appellee's brief, p. 4.
[2] Appellee's brief, p. 2, complaint, ¶ 8.
[3] Appellee's complaint, p. 2, ¶ 7.
[4] Appendix to brief of defendants-appellants, pgs.32-35.
[5] (F) "`Political subdivision' or `subdivision' means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state. `Political subdivision' includes, but is not limited to, a county hospital commission appointed under Section 339.14 of the Revised Code, regional planning commission created pursuant to section713.21 of the Revised Code, county planning commission created pursuant to Section 713.22 of the Revised Code, joint planning council created pursuant to Section 713.231 [713.23.1] of the Revised Code, interstate regional planning commission created pursuant to Section 713.30 of the Revised Code, port authority created pursuant to Section 4582.02 or 4582.26 of the Revised Code or in existence on December 16, 1964, regional council established by political subdivisions pursuant to Chapter 167. of the Revised Code, emergency planning district and joint emergency planning district designated under Section 3750.03 of the Revised Code, joint emergency medical services district created pursuant to Section 307.052 [307.05.2] of the Revised Code, a fire and ambulance district created pursuant to Section 505.375 [505.37.5] of the Revised Code, joint interstate emergency planning district established by an agreement entered into under that section, county solid waste management district and joint solid waste management district established under Section 343.01 or 343.012
[343.01.2] of the Revised Code, and community school established under Chapter 3314. of the Revised Code."
[6] (m) The operation of a job and family services department or agency, including, but not limited to, the provision of assistance to aged and infirm persons and to persons who are indigent.