OPINION
{¶ 1} Plaintiffs-appellants, Simon Bush, individually, and as guardian of Keyonne Bush and Anissa Bush, minors, and Sheila Bush,[1] appeal from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of defendantsappellees, City of Columbus and the Columbus City School Board of Education. For the following reasons, we affirm.
 {¶ 2} According to undisputed facts, on September 17, 2001, while Keyonne Bush, a middle school student, was walking home from school along the berm of Lockbourne Road in Columbus, he was struck and injured by a vehicle that was driven by defendant-appellee Edward Beggrow.
 {¶ 3} Thereafter, in a "second amended complaint,"[2] plaintiffs sued Beggrow, Columbus City School Board of Education ("school board"), City of Columbus ("city"), Insurance Company of the State of Pennsylvania, and Cincinnati Insurance Company. Plaintiffs' second amended complaint asserted five causes of action: (1) negligence and infliction of emotional distress against Beggrow, (2) declaratory judgment against Insurance Company of the State of Pennsylvania for the purpose of establishing underinsured motorist coverage, (3) declaratory judgment against the Cincinnati Insurance Company for the purpose of establishing underinsured motorist coverage, (4) negligence by the school board, (5) negligence by the city, and (6) a demand for prejudgment interest.
 {¶ 4} During the course of litigation, the school board filed a cross-claim against Beggrow. The school board's cross-claim alleged that if the school board were found liable, then any damages were the direct and proximate fault of Beggrow and the school board should be entitled to indemnification and contribution from Beggrow.
 {¶ 5} Pursuant to Civ.R. 41(A)(1)(a), plaintiffs later dismissed without prejudice Cincinnati Insurance Company and Insurance Company of the State of Pennsylvania. The trial court also dismissed Beggrow with prejudice. Following the dismissal of these defendants, the city and school board separately moved for summary judgment, and plaintiffs moved for partial summary judgment against the city and school board. On November 6, 2003, the trial court granted summary judgment in favor of the city and school board.
 {¶ 6} From this judgment, plaintiffs appeal and assign two errors for our review:
ASSIGNMENT OF ERROR I
The trial court erred in granting the city of columbus' motion for summary judgment against appellants.
ASSIGNMENT OF ERROR II
The trial court erred in granting the columbus city school board of education's motion for summary judgment on grounds that the school board is immune from liability for appellants' negligent supervision claims.
 {¶ 7} Our analysis begins by determining whether this court has jurisdiction to consider the merits of this appeal. An appellate court may sua sponte raise the issue of subject-matter jurisdiction. State exrel. White v. Cuyahoga Metro. Hous. Auth. (1997), 79 Ohio St.3d 543, 544. Parties to a case may not waive or bestow subject-matter jurisdiction upon a court. Id. Absent a final appealable order, an appellate court lacks jurisdiction to consider the matter, Gen. Acc. Ins. Co. v. Ins.Co. of N. Am. (1989), 44 Ohio St.3d 17, 20, and the matter must be dismissed. Renner's Welding and Fabrication, Inc. v. Chrsyler MotorCorp. (1996), 117 Ohio App.3d 61, 64. See, also, Gen. Acc. Ins. Co.of N. Am., at 21 (instructing that when determining whether a judgment is final, an appellate court must determine if the order is final within the requirements of R.C. 2505.02 and, if the order is final pursuant to R.C.2505.02, an appellate court must decide if Civ.R. 54[B] language is required); Mogavero v. Lombardo (Sept. 25, 2001), Franklin App. No. 01AP-98.
 {¶ 8} Here, although the trial court's judgment granted the city's and school board's motions for summary judgment, the trial court's judgment made no express determination concerning plaintiffs' motions for partial summary judgment. We observe, however, that in its decision, the trial court earlier denied plaintiffs' motions for partial summary judgment. In view of the trial court's decision and the language the trial court employed in its judgment, we construe the trial court's judgment as impliedly overruling plaintiffs' motions for summary judgment. SeeEconomy Fire Cas. Co. v. Craft General Contractors, Inc. (1982),7 Ohio App.3d 335, 337, citing Andrews v. Bd. of Liquor Control
(1955), 164 Ohio St. 275, 282 (an appellate court may look to a trial court's opinion to clarify the trial court's judgment).
 {¶ 9} The trial court's judgment also made no determination concerning the school board's cross-claim against Beggrow and the trial court's judgment lacked Civ.R. 54(B) language. However, because the trial court granted summary judgment in favor of the school board, we conclude that the effect of the trial court's judgment was to render moot the school board's cross-claim against Beggrow, which was based upon theories of contribution and indemnification. See Wise v. Gursky (1981),66 Ohio St.2d 241, syllabus (holding that "[a] judgment for the defendant in a civil action, which judgment renders the defendant's third-party complaint for indemnification or contribution moot, is a final appealable order pursuant to R.C. 2505.02, and Civ.R. 54(B) is not applicable to such a judgment"); General Acc. Ins. Co. v. Ins. Co. of N. Am., at 21, citing Wise, supra (stating that "even though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable").
 {¶ 10} Accordingly, having concluded that the trial court's judgment impliedly overruled plaintiffs' motions for partial summary judgment and the trial court's judgment rendered moot the school board's cross-claim against Beggrow, we find the trial court in its judgment disposed of all claims before it. We therefore conclude the trial court's judgment is a final appealable order and the matter before us is ripe for appellate review. See, generally, R.C. 2505.02(B); State ex rel. Hughes v. Celeste
(1997), 67 Ohio St.3d 429, 430, citing Bellaire City Schools Bd. of Ed.v. Paxton (1979), 59 Ohio St.2d 65 (stating that under R.C. 2505.02, an order is final and appealable if it affects a substantial right, it in effect determines the action, and it prevents a judgment).
 {¶ 11} Appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. "`De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" Id., quoting Brewer v. ClevelandCity Schools Bd. of Edn. (1997), 122 Ohio App.3d 378, citing Dupler v.Mansfield Journal Co., Inc. (1980), 64 Ohio St.2d 116, 119-120, certiorari denied (1981), 452 U.S. 962, 101 S.Ct. 3111.
 {¶ 12} Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd.
(1997), 78 Ohio St.3d 181, 183.
 {¶ 13} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421, 430; Civ.R. 56(E).
 {¶ 14} Plaintiffs' first assignment of error asserts the trial court erred by granting summary judgment in favor of the city. According to plaintiffs' second amended complaint, the city was negligent because it allegedly failed to keep the berm along Lockbourne Road free and clear from nuisance, defect, and danger, thereby allegedly directly and proximately causing Keyonne Bush's injuries. The city has asserted the defense of political subdivision immunity pursuant to R.C. Chapter 2744.
 {¶ 15} "The Supreme Court of Ohio has recognized that the availability of statutory immunity raises a purely legal issue that is properly determined by a court prior to trial." Hall v. Ft. Frye Loc. SchoolDist. Bd. of Edn. (1996), 111 Ohio App.3d 690, 694, citing Nease v.Med. College Hosp. (1992), 64 Ohio St.3d 396, 400. "[O]nce an immunity defense is deemed available as a matter of law, its applicability to the actions of the parties becomes fact-specific[.]" Hall, at 694. (Emphasis sic.) "Generally, the party asserting immunity as an affirmative defense has the burden of proving that defense by a preponderance of the evidence." Id. citing Giles v. Savannah (Mar. 26, 1993), Ashland App. No. CA-1034. "In the context of summary judgment, a party raising an immunity defense must present evidence tending to prove the underlying facts upon which the defense is based." Hall, at 694-695, citing Evansv. S. Ohio Med. Ctr. (1995), 103 Ohio App.3d 250, 255; see, also,Vance v. Jefferson Area Loc. School Dist. Bd. of Edn. (Nov. 9, 1995), Ashtabula App. No. 94-A-0041.
 {¶ 16} Enacted in response to judicial abolishment of the common-law doctrine of sovereign immunity and codified in R.C. Chapter 2744, the Political Subdivision Tort Liability Act "established statutory tort immunity in some cases in which political subdivisions, including cities, may otherwise be sued in negligence." Haynes v. Franklin,95 Ohio St.3d 344, 2002-Ohio-2334, at ¶ 9, reconsideration denied,96 Ohio St.3d 1455, 2002-Ohio-3819; see, also, former R.C. 2744.01(F) (defining "political subdivision" as including municipal corporations).[3]
 {¶ 17} "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis." Colbert v. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, at ¶ 7, reconsideration denied, 99 Ohio St.3d 1547, 2003-Ohio-4671, citingGreene Cty. Agricultural Soc. v. Liming (2000), 89 Ohio St.3d 551, 556-557. "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or a proprietary function. * * * However, that immunity is not absolute." Colbert, at ¶ 7. "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." Id. at ¶ 8. "If any of the exceptions to immunity R.C.2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." Id. at ¶ 9.
 {¶ 18} Under the statutory framework of R.C. Chapter 2744 that establishes a general grant of immunity to a political subdivision, the term "governmental function" specifically includes the "maintenance and repair of roads." Haynes, at ¶ 10; former R.C. 2744.01(C)(2)(e). However, although the "maintenance and repair of roads" is included in the general grant of immunity to a political subdivision, this general grant of immunity is not absolute. Haynes, at ¶ 10; former R.C.2744.02(B).[4]
 {¶ 19} Pursuant to former R.C. 2744.02(B):
Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
* * *
(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair, and free from nuisance, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.
* * *
(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue or be sued.
See, also, former R.C. 723.01[5] (requiring municipal corporations to keep public highways, streets, avenues, alleys, and sidewalks open, in repair, and free from nuisance).
 {¶ 20} In Haynes, the Supreme Court of Ohio stated that inManufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm. (1992),63 Ohio St.3d 318, 322, "[w]e observed that `[t]he roadway, the space immediately above the roadway, the shoulder, the berm, and the right-of-way are all under the control of the political subdivision.' * * * We held that a political subdivision has a `duty to keep the areas within its control free from nuisance, i.e., conditions that directly jeopardize the safety of traffic on the highway.'" (Emphasis sic.) Id. at ¶ 13.
 {¶ 21} Accordingly, construing Haynes and former R.C. 2744.02(B)(3) and (5), we conclude that liability potentially could attach to the city for injury to a person caused by the city's negligent failure to keep a berm along a road free from nuisance.
 {¶ 22} In the present case, at the time of the accident, the berm upon which Keyonne Bush was walking was in repair and free of obstructions. Plaintiffs assert, however, that the presence of the students walking along the berm following dismissal from school created a nuisance for which the city is liable.
 {¶ 23} Even assuming, arguendo, that the presence of students walking along the berm of Lockbourne Road following dismissal from school constituted a nuisance, we find former R.C. 2744.03(A)(5) provided the city with a defense for any purported negligence.
 {¶ 24} Construing earlier decisions in Manufacturer's Natl. Bank,
supra, and Franks v. Lopez (1994), 69 Ohio St.3d 345, reconsideration denied, 69 Ohio St.3d 1483, the Supreme Court of Ohio in Haynes
established a two-prong test to determine whether a condition in the right-of-way of a road should be deemed a nuisance for purposes of R.C.2744.02(B)(3). Id. at ¶ 18. The Haynes court instructed:
* * * To withstand a motion for summary judgment, the plaintiff must satisfy the first prong of the test by establishing that the condition alleged to constitute a nuisance creates a danger for ordinary traffic on the regularly traveled portion of the road. To satisfy the second prong of the test the plaintiff must establish that the cause of the condition was other than a decision regarding design and construction. * * *
Id. at ¶ 18. (Emphasis sic.)
 {¶ 25} Thus, construing Haynes, even assuming that the absence of a sidewalk along Lockbourne Road requiring students to walk along a berm constituted a nuisance by creating a danger for the students and drivers, thereby satisfying the first prong of the Haynes test, we must determine whether the absence of a sidewalk was other than a decision regarding design and construction. See Haynes, at ¶ 18.
 {¶ 26} Pursuant to former R.C. 2744.03:[6]
(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
* * *
(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 27} Here, according to deposition testimony of John Sliemers, a neighborhood mobility engineer, acting traffic calming coordinator and pedestrian coordinator for the city, prior to the accident, the city had no knowledge of any students or pedestrians having been struck by a car along the portion of Lockbourne Road where Bush's accident occurred.[7]
Additionally, according to Sliemers, the decision to not install sidewalks was an exercise of discretion or judgment concerning the use of available city resources.[8]
 {¶ 28} However, even though the decision to not install sidewalks along the portion of Lockbourne Road where the accident occurred was an exercise of discretion, we must still determine whether the city's discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 29} In Hancock v. Ashenhurst, Franklin App. No. 03AP-1163, 2004-Ohio-3319, construing the terms "malicious purpose" and "bad faith," as used in R.C. 2744.03(A)(6)(b), this court observed:
* * * "`Malice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. * * * `Bad faith' involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." * * *
Id. at ¶ 11, quoting Cook v. Cincinnati (1995), 103 Ohio App.3d 80,90-91, dismissed, appeal not allowed, 74 Ohio St.3d 1444, certiorari denied (1996), 517 U.S. 1120, 116 S.Ct. 1353.
 {¶ 30} Furthermore, in Fabrey v. McDonald Village Police Dept.
(1994), 70 Ohio St.3d 351, the Supreme Court of Ohio explained that "wanton misconduct was the failure to exercise any care whatsoever." Id. at 356, construing Hawkins v. Ivy (1977), 50 Ohio St.2d 114, syllabus. The Fabrey court instructed that "`mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.'" Fabrey, at 356, quotingRoszman v. Sammet (1971), 26 Ohio St.2d 94, 96-97. "Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. Fabrey, at 356, citingRoszman, at 97. The Fabrey court also instructed that "`[t]he actor's conduct is in reckless disregard of the safety of others if * * * such risk is substantially greater than that which is necessary to make his conduct negligent.'" Id. at 356. See, also, Hancock, at ¶ 11; Thompsonv. McNeill (1990), 53 Ohio St.3d 102, 104-105.
 {¶ 31} Based upon our review of the evidence, we do not find that the city's judgment or discretion was exercised with willful and intentional design to do injury, involved a dishonest purpose, or demonstrated a failure to exercise any care whatsoever. Accordingly, we cannot conclude that the city's judgment was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
 {¶ 32} Therefore, because the decision to not install sidewalks was based upon an exercise of judgment or discretion concerning the use of available resources that was not exercised with malicious purpose, in bad faith, or in a wanton or reckless manner and, absent any actual or constructive notice, we conclude that pursuant to Haynes, supra, and former R.C. 2744.03(A)(5), as a matter of law, the city is immune from liability on the basis that it failed to keep the berm free from nuisance.
 {¶ 33} At oral argument, plaintiffs also suggested that the city was liable due to high grass beside the berm that required students to walk closer to the roadway instead of walking along the grassy areas that were further from the roadway. Based upon the record, we cannot determine whether the city had responsibility for maintaining the grassy stretches of land at issue. Accordingly, having failed to establish that the city was responsible for maintaining the grassy stretches of land, we conclude that plaintiffs have failed in their burden to establish the city's liability based upon this theory. See Ayers-Sterrett, Inc. v. Cilli
(Feb. 22, 2002), Van Wert App. No. 15-01-09 (observing that in a civil case a plaintiff bears the burden of proof to establish all elements of a claim by a preponderance of the evidence); Dresher, at 293 (observing that after a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial).
 {¶ 34} Accordingly, for the foregoing reasons, plaintiffs' contention that the trial court erred by granting summary judgment in favor of the city is unconvincing. Plaintiffs' first assignment of error is therefore overruled.
 {¶ 35} Plaintiffs' second assignment of error asserts the trial court erred by granting summary judgment in favor of the school board. Plaintiffs' second amended complaint asserts the school board was negligent because the board and the school's administrators, faculty, or staff failed to provide "even nominal safety aids such as crossing guards, traffic assistance by police or other safety measures or supervision for students walking home."[9] Plaintiffs further allege that the school board "had a duty to ensure that Keyonne Bush had a safe way to get home from school and had a duty to supervise the students and premises after school ended"[10] and that the school board acted in a "wanton or reckless manner" toward him.[11] The school board asserts the defense of political subdivision immunity pursuant to R.C. Chapter 2744.
 {¶ 36} For purposes of R.C. Chapter 2744, a "political subdivision" includes a school district. Former R.C. 2744.01(F). Because the school board is a political subdivision, we must employ a three-tiered analysis to determine whether the school board is immune from tort liability pursuant to R.C. Chapter 2744. See Colbert, supra, at ¶ 7-9.
 {¶ 37} According to former R.C. 2744.01(C)(2)(c), the provision of a system of public education constitutes a governmental function. See, also, Coleman v. Cleveland School Dist. Bd. of Edn., Cuyahoga App. No. 84274, 2004-Ohio-5854, at ¶ 66. Under former R.C. 2744.02(A)(1), a political subdivision is generally immune from liability incurred in performing a governmental function. See, also, Colbert, at ¶ 7.
 {¶ 38} Because the school board is a political subdivision performing a governmental function and is generally immune from liability, we must determine whether any of the five exceptions to immunity listed in former R.C. 2744.02(B) apply to expose the school board to liability. Colbert,
at ¶ 8. Here, we find that division (B)(4) and (B)(5) of former R.C.2744.02 are the only exceptions that possibly may apply under the facts and circumstances of this case.
 {¶ 39} Former R.C. 2744.02(B)(4) provided:
Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
* * *
(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.
 {¶ 40} Here, even construing the evidence in favor of plaintiffs and even assuming arguendo the school board was negligent, there is no evidence that Keyonne Bush was injured while on school premises.[12]
Absent any evidence that Keyonne Bush was injured on school premises, we conclude liability cannot attach to the school board under former R.C.2744.02(B)(4).
 {¶ 41} Neither do we find any evidence to support a finding that division (B)(5) of former R.C. 2744.02 applies to expose the school board to liability.
 {¶ 42} According to the record, at the time of the accident, the head school custodian was responsible for turning on and off the flashing school zone light sign.[13] However, there is conflicting evidence whether the school's head custodian activated the flashing school zone light sign at the time of the accident.[14] Furthermore, there is conflicting evidence concerning Beggrow's rate of speed at the time he struck Keyonne Bush.[15]
 {¶ 43} Even assuming that through the actions of the school's head custodian the school board assumed a duty of care to alert passing motorists that students were present by activating a flashing school zone light sign,[16] we do not find that division (B)(5) of former R.C.2744.02 applies to expose the school board to liability.
 {¶ 44} Pursuant to former R.C. 2744.02(B)(5):
In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.
See, also, Ramey v. Mudd, 154 Ohio App.3d 582, 2003-Ohio-5170, at ¶16 (observing that for an exception pursuant to R.C. 2744.02[B][5] to apply, an "appellant must be able to present a statute in which the Ohio legislature expressly imposed liability on political subdivisions for actions similar to those perpetrated by [appellee]").
 {¶ 45} Here, plaintiffs have not directed us to any statutes that expressly impose liability upon the school board for failure to activate a flashing school zone light sign. Indeed, our research reveals statutory authority that suggests liability does not attach for failure to have a flashing school zone light sign. See former R.C. 4511.21(B)(1)(a)[17]
(mandating a 20 m.p.h. speed limit when children are leaving school but also providing that "[n]othing in this section or in the manual and specifications for a uniform system of traffic control devices shall be construed to require school zones to be indicated by signs equipped with flashing or other lights, or giving other special notice of the hours in which the school zone speed limit is in effect").
 {¶ 46} Therefore, even construing the evidence in favor of plaintiffs, finding no statutory authority under the Ohio Revised Code that expressly imposes liability for failure to activate a flashing school zone light, we cannot conclude that any liability under former R.C. 2744.02(B)(5) attaches to the school board. See Ramey, at ¶ 16.
 {¶ 47} Furthermore, having concluded that, as a matter of law, the school board is immune from liability, the conflicting evidence concerning Beggrow's rate of speed at the time of the accident becomes irrelevant and immaterial with respect to the school board. Similarly, having previously concluded that, as a matter of law, the city is immune from liability, the conflicting evidence concerning Beggrow's rate of speed at the time of the accident is irrelevant and immaterial as to the city.
 {¶ 48} In their appeal, plaintiffs also assert the trial court erred by failing to rely on Addis v. Howell (2000), 137 Ohio App.3d 54, to preclude summary judgment in favor of the school board.
 {¶ 49} In Addis, Cory Addis, a second grade student, was walking home from school when he was struck by a car. On the day that he was struck, Addis, who typically rode on a school bus, was walking home from school. Addis mistakenly believed that his mother was going to pick him up from school, and when she failed to appear at school, Addis set out for home on foot because the school bus had already departed. When Addis failed to arrive at home by bus, his mother drove to the school to pick him up. Addis's mother passed her son in the opposite direction as he walked along State Route 118. When Addis's mother saw her son and stopped to turn around, Addis darted across the road toward his mother's vehicle and was struck by an automobile.
 {¶ 50} Thereafter, Addis's parents sued, inter alia, the school board, his second grade teacher, and the school principal, alleging that school board employees failed to provide Addis with supervision that would have prevented his injuries. The school board, Addis's second grade teacher, and the school principal claimed immunity pursuant to R.C. Chapter 2744. Both plaintiffs and defendants moved for summary judgment.
 {¶ 51} The trial court awarded summary judgment in favor of plaintiffs on their claims that the defendants breached a duty of care toward Cory Addis when they failed to supervise his movements. However, finding that genuine issues of material fact remained, the trial court denied plaintiffs' summary judgment motion as to their claim that defendants' breach proximately resulted in the accident from which Addis was injured. The trial court granted defendants' motion for summary judgment on their immunity defense, finding that plaintiffs' claims for relief were precluded by R.C. 2744.03(A)(5) and (6). Specifically, the trial court held the school board and its two employees were immune from liability pursuant to R.C. 2744.03(A)(5) and (6) because the acts and omissions of Addis's second grade teacher and school principal were neither reckless nor wanton.
 {¶ 52} On appeal, the Second District Court of Appeals determined, among other things, that the trial court correctly granted summary judgment in favor of Addis's second grade teacher and the school principal because these defendants did not act in a reckless or wanton manner in failing to supervise Addis's movements.
 {¶ 53} However, as to the school board, the Second District Court of Appeals found that the school board's conduct was not an exercise of judgment or discretion and, therefore, R.C. 2744.03(A)(5) did not confer immunity from liability upon the school board. The Addis court stated:
* * * The breach resulted from the failure of the board's employees to supervise Cory's movements. Cory and other children who did not ride a school bus were simply permitted to fend for themselves, absent any plan or program to produce that result. The acts or omissions involved are not an exercise of discretion covered by R.C. 2744.03(A)(5). Therefore, the board is not immune per that section from liability for the negligence which the trial court found. * * *
Id. at 60.
 {¶ 54} We find the facts of Addis are distinguishable from the facts and circumstances under consideration here.
 {¶ 55} In Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardationand Developmental Disabilities, 150 Ohio App.3d 383, 2002-Ohio-6344, affirmed (2004), 102 Ohio St.3d 230, 2004-Ohio-2629, the First District Court of Appeals observed:
R.C. Chapter 2744 sets forth a three-tiered analysis to determine whether a political subdivision is immune from liability. First, R.C.2744.01(A) sets forth the general rule that political subdivisions are not liable in damages for the death or injuries of a person. Second, a political subdivision may be stripped of its immunity if it falls into one of five exceptions set forth in R.C. 2744.02(B). Finally, if immunity is removed at the second tier of analysis, immunity may be reinstated if one of the defenses listed in R.C. 2744.03 applies. It is important to notethat the defenses in R.C. 2744.03 do not come into play unless theliability attaches under one of the exceptions in R.C. 2744.02(B).
Id. at ¶ 26. (Footnotes omitted; emphasis added.) See, also, Sobiskiv. Cuyahoga Cty. Dept. of Children and Family Serv., Cuyahoga App. No. 84086, 2004-Ohio-6108, at ¶ 19, citing Cater, supra, at 28 (observing that "the defenses in R.C. 2744.03 do not come into play unless liabilityattaches under one of the exceptions in R.C. 2744.02[B]"). (Emphasis added.)
 {¶ 56} In its analysis, the Addis court only construed R.C. 2744.03; it did not expressly consider R.C. 2744.02 before reaching its determination that the acts or omissions of the school board were not an exercise of discretion that should be afforded immunity under R.C.2744.03(A)(5). As the courts in Estate of Ridley and Sobiski correctly observed, defenses that are listed in R.C. 2744.03 do not come into play unless liability attaches under one of the exceptions outlined in R.C.2744.02(B). See, also, Colbert, at ¶ 9; Cater, supra, at 28. Therefore, to the extent that Addis failed to expressly consider whether R.C. 2744.02
applied to strip the school board of immunity, we believe Addis's analysis is flawed.
 {¶ 57} In Addis, the Second District Court of Appeals stated that in its view R.C. 2744.03(A)(5) should not cover decisions that involved inadvertence, inattention, or unobservance. Addis, at 60. Rather, "[s]ome positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved is required in order to demonstrate an exercise of discretion for which R.C. 2744.03(A)(5) confers immunity from liability on a political subdivision." Id.
 {¶ 58} Here, construing the evidence in favor of plaintiffs, there is evidence of some positive exercise of judgment by the school board that portrays a considered adoption of a particular course of conduct. In an affidavit, the director of transportation services for the Columbus school district averred that providing transportation for a student who lived within two miles of the student's school was discretionary and based upon resources and other factors.[18] See, generally, former R.C. 3327.01;[19] 1980 Ohio Atty.Gen.Ops. No. 80-12.
 {¶ 59} In the present case, it is undisputed that Keyonne Bush lived within two miles of school and, therefore, whether to provide Bush with transportation from school was based upon the school board's exercise of discretion. In Pope v. Trotwood-Madison City School Dist. Bd. of Edn.,
Montgomery App. No. 20072, 2004-Ohio-1314, appeal not allowed,103 Ohio St.3d 1405, 2004-Ohio-3980, the Second District Court of Appeals discussed Addis and observed that in Addis "children who were riding home with an adult were simply released into the school parking lot. Eight-year-old Addis had been unsupervised in the parking lot because he believed that his mother would pick him up." Pope, at ¶ 25. UnlikeAddis, in this case Bush was not an eight-year-old child who was simply released unsupervised into the school parking lot to await the arrival of a parent to pick him up from school. Thus, we find Addis is distinguishable, and we cannot conclude the trial court's lack of reliance upon Addis was error.
 {¶ 60} Consequently, for the foregoing reasons, we conclude the trial court did not err by granting summary judgment in favor of the school board. Plaintiffs' second assignment of error is therefore overruled.
 {¶ 61} Finally, although we have concluded that, as a matter of law, the trial court correctly granted summary judgment in favor of the city and school board, our decision should not be construed as condoning conditions or policies that endanger school-age children as they traverse on foot to and from school. The Supreme Court of Ohio has observed:
* * * "[c]hildren of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter * * *. The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ; and therefore, the greater precaution should be taken, where children are exposed to them." * * *
Di Gildo v. Caponi (1969), 18 Ohio St.2d 125, 127. (Citation omitted.)
 {¶ 62} Nonetheless, "[i]n the absence of a constitutional concern * * * the judiciary's function is to interpret the law as written by the General Assembly. `"[T]he legislature is the final arbiter of public policy, unless its acts contravene the state or federal Constitutions."'"Beagle v. Walden (1997), 78 Ohio St.3d 59, 62 (citations omitted). See, also, Meyer v. Parr (1941), 69 Ohio App. 344, 350 (observing that "[t]he judicial department is not the policy making branch of the government, and is not at liberty to usurp the function of that department"); Section 1, Article II, Ohio Constitution.
 {¶ 63} Accordingly, based upon the issues before us and the law as written, and having overruled both of plaintiffs' assignments of error, we therefore affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown, P.J., and Sadler, J., concur.
[1] Within the record, plaintiffs alternately refer to Sheila Bush as Sheila Beasley.
[2] Plaintiffs filed two documents entitled "second amended complaint." The first document was filed on May 17, 2002, and the second document was filed on February 19, 2003. When referring to plaintiffs' second amended complaint in this opinion, we shall be referring to the latter document.
[3] Since the accident at issue here, subsequent legislation has amended R.C. 2744.01 multiple times.
[4] Since the accident at issue here, subsequent legislation has amended R.C. 2744.02. See Am.Sub.S.B. No. 106, effective April 9, 2003.
[5] Since the accident at issue here, subsequent legislation has amended R.C. 723.01. See Am.Sub.S.B. No. 106, effective April 9, 2003.
[6] Since the accident at issue here, subsequent legislation has amended R.C. 2744.03.
[7] Apr. 28, 2003, Depo. of Sleimers, at 12. In their appellate brief, to support their contention that the city had actual knowledge about dangers along Lockbourne Road where the accident occurred, plaintiffs cite to deposition testimony of Egan Foster whom plaintiffs identify as the city's traffic operations and right of way engineer. However, according to the record, Foster's deposition was not filed with the trial court and, therefore, Foster's testimony is not in evidence before this court. See, generally, State v. Ishmail (1978), 54 Ohio St.2d 402, paragraph one of the syllabus (holding that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter"); State v. Morgan (1998), 129 Ohio App.3d 838, 842, appeal not allowed (1999), 84 Ohio St.3d 1475, citing Ishmail, supra (observing that "[i]t is axiomatic that a court of appeals is bound by the record before it and may not consider facts extraneous to the record").
[8] Depo. of Sleimers, at 20, 31-32.
[9] Second Amended Complaint, at paragraph 44.
[10] Id. at paragraph 47.
[11] Id. at paragraph 48.
[12] Jan. 15, 2003, Depo. of Dr. Henderson Days, at 23 (testifying that after the accident he found Keyonne Bush beyond school property); May 15, 2002, Depo. of Britney Anderson, at 22, 23 (testifying she was unsure how far from school the accident occurred and estimating that Keyonne Bush was within 100 yards of the school's driveway when he was struck).
[13] Depo of Days, at 20.
[14] Depo. of Days, at 20 (testifying that at the time he found Keyonne Bush the school zone light was illuminated); May 20, 2002, Depo. of Edward Beggrow, at 12 (testifying the school zone light was not illuminated prior to the accident).
[15] Depo. of Beggrow, at 12 (testifying that he was driving 10 m.p.h. at the time of the accident); May 15, 2002, Depo. of Deaunta Davis, at 12 (testifying that the accident happened quickly and the driver of the car was not traveling at the speed limit); Depo. of Anderson, at 13 (testifying that the driver of the car was traveling faster than 20 m.p.h.).
[16] See, generally, Chambers v. St. Mary's School (1998),82 Ohio St.3d 563, 565, reconsideration denied, 83 Ohio St.3d 1453, citing Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, paragraph one of the syllabus (providing that for purposes of actionable negligence, "a duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case"); Mussivand v. David
(1989), 45 Ohio St.3d 314, 318 (stating that whether a duty exists is a question of law for a court to determine).
[17] Since the accident at issue here, subsequent legislation has amended R.C. 4511.21.
[18] Affidavit of Lori Carter-Evans, dated May 5, 2003, at paragraph 6. Furthermore, Carter-Evans averred that prior to Bush's accident, the school board had not received complaints by parents or others concerning the safety of students who walked home from the school that Bush attended. Id. at 8.
[19] Since the accident at issue here, subsequent legislation has amended R.C. 3327.01.