JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Joe Wolanin, appeals the decisions of the trial court. Having reviewed the arguments of the parties and the pertinent law, we reverse the decisions of the trial court that granted the motion for summary judgment of defendants-appellees, Robert Holmes and the Board of Park Commissioners for the Cleveland Metropolitan Park District (collectively "appellees" or "Cleveland Metroparks"), and denied Wolanin's cross-motion for summary judgment, and we remand the case for further proceedings.
 {¶ 2} A complaint was filed by Wolanin on December 14, 2005. Appellees filed a motion for summary judgment on May 23, 2006. Wolanin filed a brief in opposition to the appellees' motion, as well as a cross-motion for summary judgment on June 23, 2006. On June 29, 2006, the trial court issued an order granting the appellees' motion for summary judgment and denying Wolanin's cross-motion for summary judgment. It is this order of the trial court that is the subject of this appeal.
 {¶ 3} The Cleveland Metroparks Zoo encompasses approximately two hundred acres of land within the city of Cleveland. The zoo operates a tram transportation system in order to transport zoo patrons from one end of the zoo to the other. The tram in this case allegedly hit Wolanin when he was at the northern trek entrance located in a turnaround on the zoo property. The tram at issue in this case consisted of a two-unit system operated by a driver who was located at the front of the first unit. This tram carried passengers at slow speeds within the zoo *Page 3 
and contained open-air, bench-like seating, with no doors, window glass, or seat belts. This particular tram was not to transport patrons outside of the zoo.
 {¶ 4} Wolanin and his friend Karen Smith and her five-year-old daughter visited the zoo in July 2004. After entering at the northern trek entrance gate, Wolanin and his friends proceeded to an information booth and then made their way to the turnaround area to discuss their plans to view the zoo. The tram was also in the turnaround area, having recently loaded patrons for transport. Zoo employee Robert Holmes was the tram operator on that day. As Holmes turned the tram into the turnaround area, the first unit of the tram apparently passed Wolanin without incident. However, the rear of the second unit of the tram came into contact with Wolanin as it negotiated the turnaround.
 {¶ 5} Wolanin raises two assignments of error, which are interrelated and shall be addressed together.
 {¶ 6} First assignment of error: "The trial court erred in granting Defendant-Appellee Robert L. Holmes, et al.'s motion for summary judgment."
 {¶ 7} Second assignment of error: "The trial court erred in denying Plaintiff-Appellant Joe Wolanin's Cross-Motion for Summary Judgment."
 {¶ 8} Wolanin argues that the court erred when it granted appellees' motion for summary judgment and denied his cross-motion for summary judgment. *Page 4 
 {¶ 9} This court reviews a trial court's grant of summary judgment de novo. Ekstrom v. Cuyahoga County Comm. College, 150 Ohio App.3d 169,2002-Ohio-6228. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Dussell v. Lakewood Police Dept,99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, citing State ex rel. Duganitz v.Ohio Adult Parole Auth., 77 Ohio St.3d 190, 191, 1996-Ohio-326.
 {¶ 10} Cleveland Metroparks is a political subdivision of the state of Ohio. Willoughby Hills v. Bd. of Park Commrs. of Cleveland Metro. ParkDist. (1965), 3 Ohio St.2d 49. R.C. 2744.02(A)(1) confers on all political subdivisions a blanket immunity, which provides that they are not liable for injury, death or loss to persons or property that occurred in relation to the performance of a governmental or proprietary function. However, R.C. 2744.02(B) lists five exceptions to this blanket immunity. If one of the exceptions to immunity is found to apply, R.C.2744.03 lists several defenses or immunities to liability for both the political subdivision and its employees. Nevertheless, the defenses in R.C. 2744.03 do not apply unless liability attaches under one of the exceptions in R.C. 2744.02(B). Sobiski v. Cuyahoga *Page 5 County Dept. of Children Family Servs., Cuyahoga App. No. 84086,2004-Ohio-6108.
 {¶ 11} The "maintenance and operation" of a zoo is a governmental function. R.C. 2744.01(C)(2)(u)(iii). Zoo operations typically include some type of transportation system. Operation of the zoo's transportation system in this case is a governmental function for which there is immunity. The appellees' immunity can only be removed if one of the narrowly defined exceptions set forth in R.C. 2744.02(B)(1) through (B)(5) apply.
 {¶ 12} R.C. 2744.02(B) contains the exceptions to the general rule of immunity to liability for political subdivisions and states in pertinent part:
 "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. The following are full defenses to that liability:
 "(a) A member of a municipal corporation police department or any other police agency was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct;
 "(b) A member of a municipal corporation fire department * * *;
 "(c) A member of an emergency medical service * * *. *Page 6 
 "(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
 "(3) * * *, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair * * *.
 "(4) * * * political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, * * *.
 "(5) * * *, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision * * *." (Emphasis added.)
 {¶ 13} Wolanin argues that the tram that struck him qualified as a "motor vehicle" under R.C. 2744.02(B)(1), and Wolanin further argues that the appellees conceded as much. However, appellees state in their brief that they never conceded that the tram was a motor vehicle. In addition, appellees argue that the driver was not negligent.
 {¶ 14} Wolanin asserted he was standing stationary on a zoo pathway after obtaining a diagram of the park when he was struck by the tram. He claimed his back was toward the tram and he never saw or heard it until it struck him. Wolanin's *Page 7 
companion, Smith, and another witness, Sherri Bailey, offered somewhat similar testimony indicating that Wolanin was struck by the second unit of the tram.
 {¶ 15} The appellees offered the findings of Officers Barrett and Anderson who reenacted the accident scene on three separate occasions. In each instance they found the operation of negotiating the tram around the turnaround required the second unit of the tram to follow the same path that the first unit followed. Therefore, they concluded that since Wolanin was apparently not hit by the first unit of the tram car, this demonstrated that he must have entered the tram's path in-between the first and second units. They concluded that the only way the second car could have struck Wolanin is if he inadvertently moved into the path of the second car after the first car already passed. Appellees claim that this evidence demonstrates that the driver's actions in this case did not contribute to the accident.
 {¶ 16} We disagree. The operation of the tram and how Wolanin was hit is a material issue of fact that remains in dispute. Even assuming Wolanin was moving at the time he was struck, this fact alone does not serve to automatically absolve the appellees of responsibility for negligence. For this reason, we reverse the trial court's decision to grant summary judgment in favor of the appellees on the question of negligence.
 {¶ 17} With respect to the trial court's ruling on the cross-motion for summary judgment, Wolanin argues in his brief and in his cross-motion for summary judgment *Page 8 
that the tram is a motor vehicle under the statute. We find merit to Wolanin's argument.
 {¶ 18} For purposes of R.C. 2744, motor vehicle has the same definition as Section 4511.01 of the Revised Code. See R.C. 2744.01(E). R.C. 4511.01(B) defines "motor vehicle" as "every vehicle propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires * * *." Encompassed within the definition of motor vehicle is the term vehicle, which is also defined in R.C. 4511.01(A), where "vehicle" is defined as "every device, including a motorized bicycle, in, upon, or by which any person or property may be transported or drawn upon a highway * * *." R.C.2744.01(E) does not limit the definition of motor vehicle to that contained in R.C. 4511.01(B). Instead, it expressly provides that motor vehicle is defined by "section 4511.01," meaning the entire section. Therefore, the definition of vehicle set forth in subsection (A) is included within the definition of motor vehicle in subsection (B) and, thus, requires that the motor vehicle be capable of transporting people or property upon a highway.
 {¶ 19} The evidence demonstrates that the tram operated by Cleveland Metroparks was used for transporting zoo patrons in and around zoo property. The tram involved in this case was not licensed or registered for use on a highway. It is an open-air vehicle that has neither windows, doors, nor seat belts. While the tram was not used for transporting people or property on a highway, the evidence showed *Page 9 
the tram was occasionally driven to other Cleveland Metroparks' properties on public highways, under ranger escort.
 {¶ 20} The appellees' view that the tram is not a motor vehicle as outlined under R.C. 4511.01 goes against a significant body of case law from this and other districts that have held that vehicles such as golf carts, snowmobiles, motorized minibikes, forklifts, all-terrain vehicles and the like are all motor vehicles. See State v. Tramonte (Aug. 27, 1993), Ottawa App. No. 920T050; Metropolitan Property LiabilityInsurance Company v. Kott (June 15, 1979), Lucas App. No. L-78-309;Drake-Lassie v. State Farm (1998), 129 Ohio App.3d 781; Gibboney v.Johnson (Oct. 5, 2006), Cuyahoga App. No. 87190; Cleveland v.Copley (Mar. 14, 1985), Cuyahoga App. Nos. 48595, 48596.
 {¶ 21} The tram does not lose its character as a motor vehicle merely because it was used only to transport people on zoo property. The statutory language does not require actual use on a public highway. The statute requires only that a person or property "may be" transported on a public highway or that the motor vehicle be "capable" of transporting people of property upon a highway. Here, the tram satisfies either requirement.
 {¶ 22} Taken to the extreme, a contrary view could result in a zoo tram operator drinking alcohol on the job all day to a level of impairment and then avoiding a charge of operating a vehicle under the influence by Cleveland *Page 10 
Metroparks rangers because the tram does not meet the definition of a motor vehicle. Countless cases involving similar or like vehicles on both public and private property have held otherwise. See, e.g.,State v. Gottfried (1993), 86 Ohio App.3d 106.
 {¶ 23} The tram in question is equipped with a Chrysler 3.3 liter V-6 engine. Its primary purpose is to transport passengers. Again, the fact that the appellees acknowledge that the tram has been driven on public roads without passengers under ranger escort reinforces that it "may be" or is "capable" of transporting passengers or property on a public highway. Under the plain language definition of a motor vehicle, there is no requirement that the tram actually be on a public highway transporting passengers for the motor vehicle exception to apply under R.C. 2744.02(B)(1).
 {¶ 24} Accordingly, we find that the tram in this case is a "motor vehicle" and the exception to immunity under R.C. 2744.02(B)(1) does apply. As a result, we find that the evidence in the case does not support the lower court's ruling in either instance.
 {¶ 25} Accordingly, Wolanin's first and second assignments of error have merit and the decisions of the trial court are reversed.
It is ordered that appellant recover from appellees costs herein taxed.
The court finds there were reasonable grounds for this appeal. *Page 11 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, PRESIDING JUDGE
KENNETH A. ROCCO, J., CONCURS;
ANTHONY O. CALABRESE, JR., J. DISSENTS (with separate opinion)