JOURNAL ENTRY AND OPINION
{¶ 1} Appellants Cuyahoga County Department of Children and Family Services ("CCDCFS") and E.R. ("the aunt") appeal the trial court's denial of their joint motion to vacate permanent custody and grant legal custody of G.R. to the foster parents. We find merit to this appeal and reverse and remand for further proceedings consistent with this opinion.
 {¶ 2} G.R. was born on December 8, 1999, and because she tested positive for methadone, the juvenile court placed her in the custody of CCDCFS. Subsequently, CCDCFS sought pre-dispositional temporary custody on the grounds that G.R. was both neglected and abused. In their complaint, CCDCFS alleged that G.R.'s mother tested positive for methadone at G.R.'s birth, that she failed to receive any prenatal care, and that at the hospital she provided a false name and social security number to conceal her identity.
 {¶ 3} Upon receiving custody of G.R., CCDCFS placed her with foster parents ("the foster parents"). On March 10, 2000, the court granted CCDCFS temporary custody of G.R. As part of G.R.'s case plan, her parents were to receive drug treatment, to take parenting classes, and to receive a mental health assessment and follow through with any referrals. Ultimately, G.R.'s parents failed to meet any objectives of the case plan, failed to remedy the unsuitable conditions at their home, and failed to comply with the specific requests of CCDCFS, i.e., mother to obtain psychological evaluation and father to establish paternity. On November 13, 2000, CCDCFS moved for permanent custody.
 {¶ 4} On the morning of the hearing in April 2001, CCDCFS moved to amend its motion from one seeking permanent custody to a motion for legal custody to the maternal aunt ("E.R."). After hearing testimony and considering the recommendation of the guardian ad litem for the child, the court denied the motion to grant the aunt legal custody but awarded CCDCFS permanent custody on August 21, 2001.
 {¶ 5} After the award of permanent custody to CCDCFS, G.R. remained with the foster parents, while her aunt and her siblings visited her regularly. In finding that G.R. developed a strong relationship with her aunt and her siblings, CCDCFS initiated steps to have G.R. removed from the foster parents and placed with E.R. for eventual adoption. Upon learning that E.R. was being considered for adoptive placement, the foster parents moved to intervene and to restrain CCDCFS from removing G.R. from their home. CCDCFS opposed the motion, arguing that severing the bond formed between G.R. and her aunt and siblings would cause irreparable harm to the child. CCDCFS further expressed its concern that the foster parents would not maintain a relationship with the siblings and E.R.
 {¶ 6} On March 7, 2002, the trial court held a hearing on the foster parents' motion and reviewed the status of G.R.'s placement. The trial court granted the foster parents' motion to intervene and ordered that G.R. remain at their residence but it also ordered CCDCFS to arrange for G.R.'s continued visitation with her aunt and her siblings.
 {¶ 7} At a status conference held on April 25, 2002, CCDCFS indicated that the eventual goal for G.R. was adoption and that both the foster parents and E.R. had expressed their desire to adopt and to initiate proceedings in probate court. Finding that CCDCFS had made reasonable efforts to finalize a permanency plan of adoption and that adoption was in G.R.'s best interest, the juvenile court ordered that G.R. remain in the permanent custody of CCDCFS and continue to reside with the foster parents until further court order or until the probate court obtained jurisdiction. The court also granted overnight visitation twice a month to E.R. and allowed for the continuation of weekly visitation.
 {¶ 8} Following the status conference, both the foster parents and E.R. petitioned the probate court for the adoption of G.R. The probate court joined their petitions and scheduled the matter for a pretrial. CCDCFS filed consents to both adoptions. During the course of pretrial negotiations, the parties, including CCDCFS, proposed an agreement wherein both the foster parents and E.R. would dismiss their adoption petitions, provided the juvenile court vacated CCDCFS's permanent custody of G.R. and granted legal custody to the foster parents with an agreement of liberal visitation to E.R. As a result of this proposed settlement agreement, the probate court stayed the adoption proceedings to allow the parties to pursue their joint request in juvenile court.
 {¶ 9} On February 7, 2003, CCDCFS, E.R., and the foster parents jointly moved to vacate permanent custody and grant legal custody to the foster parents. In their motion, they argued that because both the foster parents and E.R. wished to avoid a trial in probate court and believed the best interests of G.R. would be served through the termination of permanent custody and the award of legal custody, the juvenile court should grant their motion giving the foster parents legal custody and E.R. and the siblings visitation rights. Additionally, they sought an order restraining the parents from having any contact with G.R., and CCDCFS moved to join E.R. as a party to the proceedings.
 {¶ 10} On May 1, 2003, the court held a hearing on the motions. The participants at the hearing included E.R. and her attorney, the foster parents and their attorney, a social worker from CCDCFS, and CCDCFS' attorney. G.R.'s guardian ad litem was not present nor was notice sent to him regarding the hearing. The juvenile court heard arguments from counsel but no witnesses testified nor was any evidence presented. Counsel argued that this proposal, although unusual, encompassed the best solution for everyone because it allowed both parties to be a part of G.R.'s life. The underlying concern for both the foster parents and E.R. was that the prevailing party in the adoption proceedings might choose to exclude G.R.'s contact with the other party. To avoid this possibility and a trial in probate court, they argued that this proposal guaranteed both parties involvement in G.R.'s life and the best situation for G.R. The parties also argued that they did not believe G.R.'s parents would seek to exercise any of their residual parental rights if the motion was granted. CCDCFS further emphasized its concern for G.R. if either party was prevented from maintaining an ongoing relationship with her and argued that this agreement served the best interest of G.R.
 {¶ 11} In contrast to counsels' arguments, the court expressed its reservations with the proposed agreement because it precluded an adoption, which the trial court felt was better for G.R. The court additionally noted that this agreement would effectively resurrect the parents' residual rights. Having previously found that the parents were unfit to exercise any rights, the court questioned its authority to vacate permanent custody for the purpose of awarding legal custody and thereby grant the parents' residual rights. Moreover, although the parties found the court's continued jurisdiction over the case to be beneficial and critical to the success of the agreement, the court was concerned that the parties would seek the court's intervention every time a visitation dispute arose. Based on these concerns, the court invited the parties to submit briefs in support of their motion.
 {¶ 12} In their briefs, E.R. and CCDCFS argued that pursuant to R.C. 2151.415(F), the court may modify any dispositional order provided the modification was in the child's best interest. They further argued that the award of legal custody was permanent in nature and that R.C. 2151.42 allowed for a modification or termination of the order only if the circumstances of the child or the person who was granted legal custody changed. Thus, even if the parents later sought custody, the statute precluded it. Moreover, they argued that with the award of legal custody, as with permanent custody, the juvenile court retained jurisdiction over G.R. and thus had the authority to limit the parents' visitation with G.R.E.R. also requested an evidentiary hearing for the purposes of demonstrating that the vacation of permanent custody and the award of legal custody was in G.R.'s best interest.
 {¶ 13} On June 10, 2000, without any evidentiary hearing, the trial court issued its order, denying the joint motion to vacate permanent custody and to grant legal custody to the foster parents. The trial court, however, granted E.R.'s motion to intervene as a party.
 {¶ 14} From this order, CCDCFS and E.R. appeal, raising three assignments of error.[1] Because we find the second and third assignments of error dispositive of the appeal, we shall address them first.
Dispositional Hearing and Presence of Guardian Ad Litem
 {¶ 15} In their second and third assignments of error, CCDCFS and E.R. contend that the trial court erred by refusing to conduct a full evidentiary hearing and by failing to notify the guardian ad litem of the hearing on their motion to vacate permanent custody and award legal custody. We agree.
 {¶ 16} The award of permanent custody and the termination of parental rights in a natural child, when the child is neither abandoned nor orphaned, is governed by R.C. 2151.414(B). The court may award an agency permanent custody of a child only after finding by clear and convincing evidence that 1) it is in the best interest of the child to grant permanent custody of the child to the agency and 2) the child cannot be placed with either of his parents within a reasonable period of time or the child should not be placed with his parents. See In re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739, and 77165.
 {¶ 17} Pursuant to R.C. 2151.417(B), the juvenile court has continuing jurisdiction over any child it has placed in permanent custody until the child reaches the age of eighteen or is adopted. See, also, R.C. 2151.353(E)(1). R.C. 2151.353(E)(2) allows any party, other than the parents whose parental rights have been terminated, to move for an order modifying or terminating any dispositional order, including an award of permanent custody. It provides:
"Any public children services agency, any private childplacing agency, the department of job and family services, or anyparty, other than any parent whose parental rights with respectto the child have been terminated pursuant to an order issuedunder division (A)(4) of this section, by filing a motion withthe court, may at any time request the court to modify orterminate any order of disposition issued pursuant to division(A) of this section or section 2151.414 [2151.41.4] or 2151.415[2151.41.5] of the Revised Code. The court shall hold a hearingupon the motion as if the hearing were the original dispositionalhearing and shall give all parties to the action and the guardianad litem notice of the hearing pursuant to the Juvenile Rules.If applicable, the court shall comply with section 2151.42 of theRevised Code."
 {¶ 18} R.C. 2151.353(E)(2) (emphasis added.) Compare R.C.2151.417(B) (also provides authority for juvenile court to amend any dispositional order but language is permissive rather than mandatory as to reviewing a motion of an interested party).
 {¶ 19} The plain language of R.C. 2151.353(E)(2) requires the trial court to conduct a dispositional hearing in the same manner as the original dispositional hearing when a public children services agency or any party to the action moves for a modification or termination of any order of disposition. See Inre Moorehead (1991), 75 Ohio App.3d 711, 716. Moreover, the trial court is to give all parties to the action, including the guardian ad litem, notice of the hearing. Id., citing R.C.2151.417(B); 2151.353(E)(2).
 {¶ 20} R.C. 2151.35 deals with hearing procedures in juvenile court. It provides that in a dispositional hearing of a child adjudicated neglected or abused, the court may admit any evidence that is material and relevant, including hearsay, opinion, and documentary evidence, and shall allow any party "to offer evidence supplementing, explaining, or disputing any information contained in the social history or other reports that may be used by the court in determining disposition." R.C. 2151.35(B)(2). Moreover, R.C. 2151.35 also requires the court to provide notice of the hearing to all parties and the child's guardian ad litem. R.C. 2151.35(C).
 {¶ 21} Finally, in making any modification or termination of a previous dispositional order, the overriding consideration for the court is "the best interest of the child." See, In re Higby
(1992), 81 Ohio App.3d 466, 469 (recognizing that the primary and overriding concern in any child custody case is the "best interest of the child"). See, also, In re Palmer (1984),12 Ohio St.3d 194, 197; In re Cunningham (1979),59 Ohio St.2d 100, 105-106; Gishwiler v. Dodez (1855), 4 Ohio St. 615; In reMoorehead, supra, at 717.
 {¶ 22} An appellate court cannot substitute its judgment in a trial court's custody determination and may not reverse absent a finding of an abuse of discretion. Trickey v. Trickey (1952),158 Ohio St. 9, paragraph two of the syllabus. Thus, we must determine whether the trial court's decision was unreasonable, arbitrary, or unconscionable and, therefore, an abuse of discretion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 23} In the instant case, CCDCFS, the foster parents, and E.R. moved pursuant to R.C. 2151.353(E)(2) for modification of the court's previous disposition order, i.e, vacate permanent custody of CCDCFS and grant legal custody to the foster parents. With this motion, CCDCFS also sought to join E.R. as an interested party. Thus, as discussed above, the trial court was required to hold a dispositional hearing and provide notice to the guardian ad litem.
 {¶ 24} Here, although the trial court set the motion for a hearing and heard arguments from counsel, no witnesses were called to testify nor was any other evidence submitted concerning the circumstances of G.R.'s current custody arrangement. Although the burden rests with the movant to set forth the evidence in support of its motion and no error can be attributed to the trial court for the movant failing to meet this burden, the movant should not be precluded from presenting such evidence if desired. See, In re Hitchcock (1996), 120 Ohio App.3d 88, 98. See, also, R.C. 2151.35(B).
 {¶ 25} Our review of the record reveals that the trial court gave mixed messages to the parties as to whether they were permitted to present testimonial evidence from witnesses, such as the social worker, the foster parents, or even E.R., in support of the motion. At one point during the proceedings, the trial court indicated that it wanted to hear only from counsel, but later the court seemed to suggest it was willing to consider testimonial evidence from witnesses. Furthermore, E.R. requested an evidentiary hearing. Considering that in the dispositional hearing awarding CCDCFS permanent custody, the trial court heard testimony and allowed the submission of evidence, including the written recommendation of the guardian ad litem, it appears that the trial court did not treat the proceedings on May 1, 2003 as a dispositional hearing.
 {¶ 26} The overriding purpose of the dispositional hearing is to determine the best interest of G.R. and that can only be accomplished by considering all the evidence concerning her custodial placement, including the recommendation of the guardian ad litem. We, therefore, find that the trial court's decision must be reversed and the matter remanded for a full dispositional hearing. See, In re Crook, Geauga App. No. 200-G-2326, 2001-Ohio-8802. Additionally, the trial court's failure to provide notice of the hearing to the guardian ad litem constitutes reversible error. Id.
 {¶ 27} Accordingly, the second and third assignments of error are well taken. Based on our disposition of these assignments of error, we find that the first assignment of error is moot.[2]
 {¶ 28} Further, this court makes no determination as to whether the court's denial of the parties' joint motion constituted an abuse of discretion based on the child's best interest. Rather, we hold that the trial court was precluded from making any determination as to the child's best interest without first complying with the procedural safeguards of R.C. 2151.353.
 {¶ 29} Judgment reversed and case remanded for proceedings consistent with this opinion.
Anne L. Kilbane, P.J., and Anthony O. Calabrese, Jr., J., concur.
It is, therefore, considered that said appellants recover of said appellees the costs herein.
It is ordered that a special mandate be sent to the Juvenile Court Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Although the foster parents were parties to the joint motion and filed a brief in support of their motion, they did not file a notice of appeal and, thus, are not parties to this appeal.
[2] The first assignment of error alleges that the court abused its discretion in denying the joint motion.