[Cite as *Ash v. Dean*, 2016-Ohio-5589.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sarah E. Ash, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 15AP-144 |
| v. | : | (C.P.C. No. 13JU02-1541) |
| Carlton D. Dean, III, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 30, 2016

**On brief:** *Kuhn Limited*, and *Ryan D. Kuhn*, for appellant. **Argued:** *Ryan D. Kuhn*.

**On brief:** *The Law Office of Nicholas W. Yaeger, LLC*, and *Nicholas W. Yaeger*, for appellee. **Argued:** *Nicholas W. Yaeger*.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

KLATT, J.

{¶ 1} Plaintiff-appellant, Sarah E. Ash, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. For the following reasons, we affirm that judgment in part and reverse it in part, and we remand this case for further proceedings before the trial court.

{¶ 2} Ash and defendant-appellee, Carlton D. Dean, III, are the parents of M.D., who was born on July 16, 2009. Although Ash and Dean lived together prior to and after M.D.'s birth, they never married. Ash and Dean ended their relationship in January 2012, and since then, they have lived separately.

{¶ 3} On February 1, 2013, Ash filed a complaint asking the trial court to designate her the sole residential parent and legal custodian of M.D. and issue an order requiring the payment of child support. Dean answered Ash's complaint and filed a counterclaim seeking an allocation of all parental rights and responsibilities.

{¶ 4} Dean moved for the appointment of a guardian ad litem for M.D. and the entry of temporary orders. A magistrate granted both motions. The temporary orders named Dean the temporary residential parent and legal custodian of M.D. and granted Ash parenting time pursuant to a specified schedule.

{¶ 5} A trial before the magistrate commenced on September 3, 2013. At trial, Ash testified that five days after M.D. was born, she, Dean, and M.D. moved from Stow, Ohio, to Columbus so Ash could attend the Ohio State University College of Dentistry. Ash, Dean, and M.D. lived together until January 2012, when Dean moved out of the apartment that he had shared with Ash and M.D. A month later, Ash voluntarily began sharing parenting time with Dean. M.D. primarily lived with Ash and spent time in his father's care every Tuesday beginning at 5:30 p.m. until Thursday at 8:30 a.m., as well as every other Friday beginning at 6:00 p.m. until Sunday at 6:00 p.m.

{¶ 6} In the spring of 2013, Ash graduated from the Ohio State University College of Dentistry and received an offer to join a dentistry practice in Brighton, Michigan. The offer included better terms than she could expect to receive from any offer to practice in the Columbus area, if she could even obtain such an offer. Moreover, Ash's family, including her parents and sister, lived in or near Brighton. Ash, therefore, asked the trial court to name her residential parent and legal custodian so both she and M.D. could move to Brighton. Nevertheless, despite her desire to relocate, Ash stated that she would not move to Brighton if she could not take M.D. with her.

{¶ 7} Dean testified that he did not believe that relocation to Brighton was in M.D's best interests. Dean pointed out that travel between Brighton and Columbus takes over three hours, which would require M.D. to endure long car rides shuttling between his parents. Dean also expressed concern that the distance would impede his ability to regularly participate in M.D.'s life, particularly once M.D. began elementary school. Dean acknowledged that if he moved to Brighton as well, then he and Ash could continue the parenting arrangement that they had already established. However, Dean testified that he

could not relocate.   In July or August 2013, Dean and a partner purchased a ServiceMaster franchise located in Zanesville, Ohio.  As a partner in and employee of the new venture, Dean had to stay in central Ohio to establish the business.

{¶ 8}   M.D.'s guardian ad litem submitted a report prior to trial and testified at trial.  The guardian ad litem concluded that "the arrangement which would be in [ ] [M.D.'s] ultimate best interests is abundantly clear:  he would be best served by frequent access to *both* parents, who live in the same city and who share decisions, information, and time between them." (Emphasis sic.)  (Guardian ad Litem's Ex. 1, Report of Guardian ad Litem, at 12.)   As Ash's move to Brighton would preclude that arrangement, the guardian had to determine whether it was in M.D.'s best interest to relocate to Brighton with his mother or stay in Columbus with his father.   The guardian recognized the benefits that Ash's move to Brighton would afford M.D., which included increased financial security and the nearby support of Ash's family and friends.  However, the move also presented a significant detriment:  M.D. would lose continued, extensive contact with one parent.  The guardian decided that Ash, the parent who was voluntarily choosing to relocate, should suffer the diminished contact with M.D.   Thus, the guardian recommended that the trial court name Dean the residential parent and legal custodian of M.D. and grant Ash parenting time that varied in duration depending on whether Ash moved to Brighton or remained in central Ohio.

{¶ 9}   On October 22, 2014, the magistrate issued a decision with findings of fact and conclusions of law.  The magistrate designated Dean the residential parent and legal custodian of M.D.  The magistrate adopted two different parenting time schedules and conditioned the use of the schedules on Ash's residence.  If Ash resided in Franklin County or a contiguous county, she would have parenting time according to the schedule the parties had followed since Dean had vacated the parties' apartment.  If Ash resided outside of Franklin County or a contiguous county, she would have parenting time on alternating weekends from Friday at 6:00 p.m. to Sunday at 6:00 p.m.  Finally, the magistrate ordered Ash to pay Dean $175 per month in child support after deciding that the guideline amount of child support, which amounted to $678.77, was unjust, inappropriate, and not in M.D.'s best interest.  On the same day the magistrate issued her decision, the trial court issued a judgment entry adopting and approving it.

{¶ 10} Ash objected to the magistrate's decision. In a decision and judgment entry issued February 5, 2015, the trial court overruled all of Ash's objections.

{¶ 11} Ash now appeals the trial court's February 5, 2015 judgment, and she assigns the following errors:

Appellant's First Assignment of Error[:]

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW BY DIVESTING APPELLANT OF HER CUSTODIAL RIGHTS BECAUSE OF A MERE REQUEST TO RELOCATE OR DESIRE TO ACCEPT EMPLOYMENT IN ANOTHER STATE. NON-RESIDENCE ALONE MAY NOT DEPRIVE A PARENT OF CUSTODY.

Appellant's Second Assignment of Error:

THE WEIGHT ATTRIBUTED BY THE TRIAL COURT TO APPELLANT'S DESIRE TO RELOCATE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AMOUNTS TO AN ABUSE OF DISCRETION.

Appellant's Third Assignment of Error:

THE TRIAL COURT ERRED AS A MATTER OF LAW AND APPLIED AN INCORRECT STANDARD FOR REVIEW BY WEIGHING "MOTHER'S PREFERRED EMPLOYMENT" AGAINST A "DIMINISHED RELATIONSHIP WITH FATHER."

Appellant's Fourth Assignment of Error[:]

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN RELYING UPON THE TESTIMONY, REPORT AND RECOMMENDATION OF THE GUARDIAN AD LITEM WITHOUT PROVIDING APPELLANT A MEANINGFUL OPPORTUNITY TO CROSS EXAMINE THE GUARDIAN CONCERNING THE CONTENTS OF THE REPORT AND THE BASIS FOR HER CUSTODY RECOMMENDATION.

Appellant's Fifth Assignment of Error:

THE TRIAL COURT'S DESIGNATION OF APPELLEE AS THE SOLE RESIDENTIAL PARENT AND LEGAL CUSTODIAN IS AGAINST THE MANIFEST WEIGHT OF

THE EVIDENCE AND AMOUNTS TO AN ABUSE OF DISCRETION.

Appellant's Sixth Assignment of Error:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO GIVE DUE CONSIDERATION TO WHICH PARENT ASSUMED THE ROLE OF PRIMARY CAREGIVER. THE TRIAL COURT'S CONCLUSION CONCERNING WHICH PARENT HAD ASSUMED THAT ROLE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AMOUNTS TO AN ABUSE OF DISCRETION.

Appellant's Seventh Assignment of Error:

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FAILING TO CONSIDER THE PARTIES' LEVEL OF FINANCIAL RESPONSIBILITY. R[.]C[.] 3109.04(F)(1) REQUIRES THAT THE COURT CONSIDER ALL RELEVANT FACTORS, NOT SIMPLY THOSE SPECIFICALLY ENUMERATED.

Appellant's Eighth Assignment of Error[:]

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DETERMINING THAT IT COULD NOT CONDITION APPELLANT'S AWARD OF CUSTODY UPON THE CHILD'S CONTINUED RESIDENCY WITHIN A DEFINED LOCALE.

Appellant's Ninth Assignment of Error:

THE TRIAL COURT'S AWARD OF CUSTODY TO THE PARENT EXERCISING ONLY ONE-THIRD OF THE PARENTING TIME IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AMOUNTS TO AN ABUSE OF DISCRETION.

Appellant's Tenth Assignment of Error:

THE TRIAL COURT'S AWARD OF CHILD SUPPORT TO APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AMOUNTS TO AN ABUSE OF DISCRETION.

Appellant's Eleventh Assignment of Error[:]

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMING THAT THE COURT WAS WITHOUT AUTHORITY TO ISSUE AN AWARD OF ATTORNEY FEES. THE DECISION TO DENY APPELLANT'S REQUEST FOR FEES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AMOUNTS TO AN ABUSE OF DISCRETION.

Appellant's Twelfth Assignment of Error[:]

THE TRIAL COURT ABUSED ITS DISCRETION BY REJECTING APPELLANT'S REQUEST TO HEAR ADDITIONAL EVIDENCE ON OBJECTION.

{¶ 12} We will begin our review of this appeal with Ash's eighth assignment of error. By that assignment of error, Ash argues that the trial court erred in not considering an award of custody conditioned upon her continued residency in central Ohio. We agree.

{¶ 13} Before the magistrate, Ash requested only that she be named the residential parent and legal custodian for M.D. However, at the oral hearing on her objections, Ash asked the trial court to consider a conditional custody arrangement. Under such an arrangement, Ash would be M.D.'s residential parent and legal custodian as long as she resided in Franklin County or a contiguous county. If Ash moved outside of Franklin County or a contiguous county, then Dean would become M.D.'s residential parent and legal custodian.[1]

{¶ 14} The trial court concluded that conditional custody arrangements such as the one Ash proposed violated the Ohio and United States Constitutions. For this conclusion, the trial court relied on *Smeltzer v. Smeltzer*, 7th Dist. No. 92-C-50, 1993 Ohio App. LEXIS 5656, 1993 WL 488235 (Nov. 24, 1993). In that case, the trial court prohibited the mother, who was the residential parent and legal custodian, from relocating the children more than 50 miles from their home in Bergholz, Ohio. The mother appealed that ruling, arguing that it unconstitutionally restricted her freedom. In finding that the trial court's ruling constituted error, the Seventh District Court of Appeals stated:

The Fourteenth Amendment of the United States Constitution and Article I, Section 1 of the Ohio Constitution bestow upon appellant the fundamental right to live where she

---

[1] While our example sets the geographical parameters at Franklin County or a contiguous county, the trial court has the discretion to adopt whatever parameters are in M.D.'s best interest.

> chooses. * * * The court's decision restricting the appellant from moving more than 50 miles from Bergholz, Ohio has unconstitutionally restricted the freedom of the appellant to live where she chooses.
>
> The court's order infringes upon appellant's fundamental right to marry and live where she chooses in violation of the United States Constitution and Ohio Constitution.

*Id.*

{¶ 15} We question both the reasoning of *Smeltzer* and its applicability to conditional custody orders. First, the legal rationale for the holding is shaky, at best. The *Smeltzer* court based its holding on "the fundamental right to live where [one] chooses" that, according to the court, arose from the Fourteenth Amendment of the United States Constitution and Article I, Section 1 of the Ohio Constitution. However, subsequent to *Smeltzer*, this court rejected the contention that the right to live where one wants is a fundamental right under the Due Process Clause of the United States Constitution. *State ex rel. O'Brien v. Heimlich*, 10th Dist. No. 08AP-521, 2009-Ohio-1550, ¶ 35. Moreover, we have difficulty conceiving how such a right emanates from Article I, Section 1 of the Ohio Constitution, which states that "[a]ll men * * * have certain inalienable rights, among which are those of * * * acquiring, possessing, and protecting property." While Article I, Section 1 recognizes all Ohioans' right to property, many people do not own or seek to own the place in which they choose to live. Therefore, the right to own property does not necessarily equate to the right to live where one chooses.[2]

{¶ 16} Second, even if there is a constitutional right to live where one chooses, we do not believe that a conditional custody arrangement precludes a parent from exercising that right. A conditional custody arrangement places no limitations on a parent's right to move. It, instead, only attaches a consequence—the loss of designation as residential parent and legal custodian—to a parent's relocation outside of a specified area. That consequence will most likely affect a parent's decision to relocate, but no court order will impede the parent's ability to move if he or she chooses to do so.

---

[2] Strangely, *Smeltzer* also references the right to marry. The *Smeltzer* decision does not explain how the facts of that case implicated the right to marry. Since that right has no application here, we do not consider it.

{¶ 17} Finally, in prohibiting any restriction on a parent's right to move, the *Smeltzer* court erroneously elevated one parent's right over all other rights and interests at issue when one parent intends to relocate. One parent may have the right to move to the residence of her choice, but the other parent has an equally important right to the care and control of the child. *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *accord In re J.W.*, 171 Ohio App.3d 248, 2007-Ohio-2007, ¶ 13 (10th Dist.) ("The right to parent one's children and maintain and pursue intimate familial associations are fundamental rights guaranteed by the Due Process Clause of the United States Constitution."). In addition to overlooking that right, the *Smeltzer* court also failed to take into account the most important factor in all custody determinations: the child's best interest.

{¶ 18} When parental relocation is at issue, a court must strike a balance between one parent's right to move and the other parent's right to meaningful parent/child contact. In conducting that balancing, the trial court must focus on arriving at the custody arrangement in the child's best interest. If the trial court concludes that a conditional custody arrangement serves the child's best interest, it may order such an arrangement without violating either parent's constitutional rights. *See Brown v. Brown*, 2d Dist. No. 2012-CA-40, 2013-Ohio-3456, ¶ 16 (holding that a conditional custody arrangement did not violate the mother's constitutional rights because it was in the children's best interests to remain in the county in which they lived).

{¶ 19} Based on the foregoing, we conclude that the trial court erred in refusing to consider ordering a conditional custody arrangement in this case. We thus sustain Ash's eighth assignment of error.

{¶ 20} Like Ash's eighth assignment of error, her first, second, third, fifth, sixth, seventh, and ninth assignments of error also challenge the custody determination. Given our ruling on Ash's eighth assignment of error, we must reverse the trial court's custody determination. Accordingly, we find the first, second, third, fifth, sixth, seventh, and ninth assignments of error moot.

{¶ 21} We next turn to Ash's fourth assignment of error, by which she argues that the trial court erred in relying on the guardian ad litem's report and testimony without giving Ash a meaningful opportunity to cross-examine the guardian. We agree that the trial court erred as alleged, but we do not find that the error warrants reversal.

{¶ 22} In cases wherein the trial court must allocate parental rights and responsibilities, the trial court may appoint a guardian ad litem to investigate matters relevant to that allocation. R.C. 3109.04(C) ("Prior to trial, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability, and financial worth of each parent * * *."); Loc.R. 27(E) of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch ("In order to superintend the best interest of minor children/incompetents in any action over which this court has jurisdiction, the court may appoint a guardian ad litem upon its own motion or the motion of either party."). In conducting her investigation, the guardian must make reasonable efforts to learn about the facts of the case. Sup.R. 48(D)(13); Loc.R. 27(G)(12). Generally, such efforts should include interviewing the child, parents, and any other individual who may have relevant knowledge; observing the child with each parent; and interviewing school personnel and medical providers and obtaining from them relevant records. Sup.R. 48(D)(13)(a) through (i); Loc.R. 27(G)(12)(a) through (k). Prior to trial, the guardian must prepare and file a report and recommendation. Sup.R. 48(F); Loc.R. 27(I). "The report shall detail the activities performed, hearings attended, persons interviewed, documents reviewed, experts consulted and all other relevant information considered by the guardian ad litem in reaching the guardian ad litem's recommendations." Sup.R. 48(F); Loc.R. 27(I).

{¶ 23} At a hearing regarding the allocation of the parental rights and responsibilities, the guardian ad litem "shall be subject to cross-examination by either parent concerning the contents of the [guardian ad litem's] report." R.C. 3109.04(C); accord *Evans v. Evans*, 10th Dist. No. 00AP-1459 (Sept. 20, 2001) (in proceedings to allocate parental rights and responsibilities, when a guardian ad litem conducts an investigation and submits a report, the trial court should provide the parties with an opportunity to cross-examine the guardian under oath concerning the content of the report); *Smith v. Smith*, 10th Dist. No. 98AP-1641 (Dec. 28, 1999) (same). This statutory edict corresponds with the requirements of procedural due process, which include a meaningful opportunity to challenge adverse evidence. *Ohio Assn. of Pub. School Emps., AFSCME v. Lakewood City School Dist. Bd. of Edn.*, 68 Ohio St.3d 175, 179 (1994); accord *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where

important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). In the context of permanent custody proceedings, the Supreme Court of Ohio has held that due process dictates that parties have the right to cross-examine a guardian ad litem concerning the contents of her report and the basis for a custody recommendation where the report will be a factor in the trial court's decision. *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, syllabus. The Supreme Court found that cross-examination was necessary "to ensure the accuracy of the information provided [to the guardian ad litem] and the credibility of those who made statements." *Id.* at ¶ 25.

{¶ 24} Given the nature of a guardian ad litem's investigation, a guardian's report will often include the out-of-court statements of those people she interviewed. Consequently, cross-examination of a guardian ad litem regarding the contents of her report raises hearsay issues. Generally, the out-of-court statements of other people are inadmissible as hearsay. Evid.R. 802. To qualify as hearsay, however, an out-of-court statement must be "offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶ 25} A guardian ad litem includes out-of-court statements in her report not to offer evidence to the trial court, but to explain the basis for her recommendation. In other words:

> when a guardian ad litem relays what a person told her, it is not for the purpose of establishing the truth of the matters relayed. Rather, it is for the purpose of describing the investigatory process of the guardian ad litem and the matters which may have influenced her opinion as to the best interests of a child.

*Sypherd v. Sypherd*, 9th Dist. No. 25815, 2012-Ohio-2615, ¶ 12. Thus, a guardian ad litem may testify to others' out-of-court statements to explain how the information conveyed in those statements shaped her conclusions. *Id.* at ¶ 13. The guardian ad litem may permissibly testify to such statements in explicating the basis for her conclusions because, in that situation, the statements are not offered for the truth.

{¶ 26} Here, the guardian ad litem prepared and filed a report, which the magistrate admitted into evidence. Ash called the guardian ad litem as a witness and cross-examined her. During the cross-examination, the magistrate precluded Ash from

inquiring into the factual basis for two of the guardian's conclusions: first, the conclusion that Ash and Dean split the caretaking responsibilities for M.D. equally prior to their breakup, and, second, the conclusion that in parenting M.D., Ash "over-manages" him. In both instances, the magistrate allowed the guardian ad litem to identify the people who supplied her with the information that she relied on to reach each particular conclusion. However, when Ash then asked the guardian ad litem to repeat the information provided, the magistrate sustained hearsay objections.

{¶ 27} We conclude that the magistrate erred in refusing to permit Ash to elicit testimony from the guardian ad litem specifying how the information she collected during her investigation impacted her conclusions. When a parent asks about the factual basis for the guardian ad litem's conclusions, the guardian must testify to those facts she relied on to reach her conclusions, regardless of whether she learned those facts through others' statements. In the context of a guardian ad litem explaining her conclusions, others' out-of-court statements do not constitute hearsay.

{¶ 28} While we conclude that the magistrate erred, our analysis is not complete. Even where a trial court errs in excluding evidence, an appellate court will affirm the trial court's evidentiary ruling unless the error materially prejudiced a party. *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 38; *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. Thus, we must next consider whether Ash suffered prejudice as a result of the magistrate sustaining the hearsay objections.

{¶ 29} With regard to the caretaking issue, Ash's questions to the guardian ad litem sought to expose her failure to consider Andrea Kline's opinion that, based on her observations, Ash was M.D.'s primary caretaker. Kline attended dentistry school with Ash, and the two often studied together at Ash and Dean's apartment in the evenings. After the magistrate blocked the guardian ad litem from testifying regarding Kline's observations and opinion, Ash called Kline to the stand. Kline then testified that Ash routinely assumed the responsibility of caring for M.D. while Dean went to the gym and played video games. The trial court, therefore, had before it the evidence that Ash sought to introduce through the guardian ad litem; namely, that Kline's observations and opinion did not correlate with the guardian ad litem's conclusion that Ash and Dean equally parented M.D. prior to the parties' breakup.

{¶ 30} With regard to Ash's parenting style, Ash asked the guardian ad litem questions intended to show that the employees at M.D.'s preschool did not see Ash as an overinvolved or "over-managing" parent. Ash circumvented the exclusion of the guardian ad litem's testimony on that issue in the same manner as she did with Kline: she called the preschool workers as witnesses. Ash elicited from them testimony that Ash was not overbearing or controlling, and that her level of involvement with M.D.'s education was appropriate. The trial court, therefore, had before it the evidence that Ash was prevented from obtaining from the guardian ad litem.

{¶ 31} In both instances, Ash ultimately introduced the evidence that she initially sought unsuccessfully from the guardian ad litem. Consequently, we conclude that the magistrate's exclusion of the guardian ad litem's testimony on the contested issues did not prejudice Ash. As we stated above, absent a showing of prejudice, we must affirm the disputed evidentiary ruling. *See Banford*, 126 Ohio St.3d 210, 2010-Ohio-2470, at ¶ 38; *Beard*, 106 Ohio St.3d 237, 2005-Ohio-4787, at ¶ 20. We, accordingly, overrule Ash's fourth assignment of error.

{¶ 32} By Ash's tenth assignment of error, she argues that the trial court erred in ordering her to pay Dean child support. We find this assignment of error moot.

{¶ 33} Pursuant to R.C. 3119.07(A):

> [e]xcept when the parents have split parental rights and responsibilities, a parent's child support obligation for a child for whom the parent is the residential parent and legal custodian shall be presumed to be spent on that child and shall not become part of a child support order, and a parent's child support obligation for a child for whom the parent is not the residential parent and legal custodian shall become part of a child support order.

Thus, by operation of statute, in sole custody arrangements, the parent designated the residential parent and legal custodian is the child support obligee, i.e., the parent who receives the child support payments, and the parent not designated the residential parent and legal custodian is the child support obligor, i.e., the parent who must pay child support. *MacMurray v. Mayo*, 10th Dist. No. 07AP-38, 2007-Ohio-6998, ¶ 29; *but see Warren v. Warren*, 10th Dist. No. 09AP-101, 2009-Ohio-6567, ¶ 22 (holding that a trial

court has the discretion to assign obligor and obligee status regardless of which parent is named the sole residential parent and legal custodian).

{¶ 34} In the case at bar, we have determined that we must reverse the trial court's decision to designate Dean the residential parent and legal custodian. On remand, the trial court could name either Ash or Dean the residential parent and legal custodian. Because attribution of the obligor and obligee roles depends on which parent is the residential parent and legal custodian, we must also reverse the trial court's decision to order Ash to pay Dean child support. Reversal of that decision enables the trial court to enter a child support order on remand that corresponds with R.C. 3119.07(A).

{¶ 35} As our reversal of the custody determination requires us to also reverse the child support determination, we will not review the merits of Ash's tenth assignment of error. We need not review the child support determination for error when we have already decided to reverse that determination. Accordingly, we find the tenth assignment of error moot.

{¶ 36} By Ash's eleventh assignment of error, she argues that the trial court erred in concluding that it lacked statutory authority to award her attorney fees. In support of her argument, Ash relies on R.C. 3123.17(B), which states:

> When a court issues or modifies a court support order, the court may include in the support order a statement ordering either party to pay the costs of the action, including, but not limited to, attorney's fees, fees for genetic tests in contested actions under sections 3111.01 to 3111.18 of the Revised Code, and court costs.

Ash contends that resolution of this action requires the issuance of a child support order, so R.C. 3123.17(B) provides the trial court with authority to grant her motion for attorney fees. *See Davis v. Honaker*, 12th Dist. No. CA2013-03-008, 2014-Ohio-171, ¶ 16 (holding that R.C. 3123.17(B) permitted the trial court to award the mother her attorney fees when the court issued a child support order); *Sunday v. Sunday*, 10th Dist. No. 07AP-981, 2008-Ohio-2307, ¶ 19 (holding that R.C. 3123.17(B) permitted the trial court to award the mother her attorney fees when the court modified a prior child support order).

{¶ 37} In response, Dean asserts that R.C. 3123.17(B) only applies when a parent has defaulted under a prior child support order and the trial court subsequently issues a new child support order. We are not persuaded. Nothing in R.C. 3123.17(B) so limits the

application of that statutory provision. While R.C. 3123.17(A) pertains to default, R.C. 3123.17(B) does not refer to it at all. When the General Assembly could have used a particular word in a statute but did not, courts will not add that word by judicial fiat. *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, ¶ 26. Therefore, we conclude that R.C. 3123.17(B) applies whenever a trial court issues or modifies a child support order, and not just when a parent has defaulted under a prior child support order. The trial court, consequently, has the authority to order Dean to pay attorney fees in this case.

{¶ 38} Ash urges this court to also conclude that she is entitled to attorney fees under R.C. 3123.17(B). Such a determination is premature. On remand, the trial court must decide in the first instance whether an award of attorney fees under R.C. 3123.17(B) is appropriate. Accordingly, we sustain Ash's eleventh assignment of error, but only to the extent that it asserts error in the trial court's ruling that it lacked authority to award attorney fees.

{¶ 39} By Ash's twelfth assignment of error, she argues that the trial court erred in denying her request that the court hear additional evidence prior to ruling on her objections. We have scoured the record, but we find no request from Ash that the trial court hear additional evidence. In her objections, Ash informed the trial court of certain events that had occurred after the hearing before the magistrate. Ash, however, neither provided the court with evidence substantiating the events she alleged nor asked the trial court to hold a hearing so that she could introduce such evidence into the record. We cannot find that the trial court erred in not hearing additional evidence when Ash never asked for a hearing in the first place.[3] Accordingly, we overrule Ash's twelfth assignment of error.

{¶ 40} For the foregoing reasons, we sustain the eighth and eleventh assignments of error, we overrule the fourth and twelfth assignments of error, and we find the remaining assignments of error moot. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile

---

[3] We note that this conclusion does not preclude the trial court from taking additional evidence on remand. *See* Juv.R. 40(D)(4)(d) (stating that, before ruling on objections, a trial court may hear additional evidence and must do so if a party demonstrates that it could not, with reasonable diligence, have produced that evidence for consideration by the magistrate).

Branch, and we remand this cause for further proceedings consistent with law and this decision.

*Judgment affirmed in part and reversed in part; cause remanded.*

SADLER, J., concurs.
BRUNNER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and dissenting in part.

{¶ 41} I concur with the decision of the majority as to Ash's eighth, first, second, third, fifth, sixth, seventh, ninth, tenth, and eleventh assignments of error, but I respectfully dissent from the majority's decision as to Ash's fourth and twelfth assignments of error.

{¶ 42} Ash's fourth assignment of error is that:

> THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN RELYING UPON THE TESTIMONY, REPORT AND RECOMMENDATION OF THE GUARDIAN AD LITEM WITHOUT PROVIDING APPELLANT A MEANINGFUL OPPORTUNITY TO CROSS EXAMINE THE GUARDIAN CONCERNING THE CONTENTS OF THE REPORT AND THE BASIS FOR HER CUSTODY RECOMMENDATION.

I would sustain and agree with Ash's fourth assignment of error, that the magistrate unduly restricted her attorney's cross-examination of the guardian ad litem ("GAL"). In her report, the GAL stated that she had spoken to the director of the child's daycare facility, and the child's teachers. The report indicated that the facility's interaction with both parents was appropriate and that no one had indicated a difference in the child's conduct, depending on which parent was involved with the child. The magistrate did not permit Ash's counsel to examine the GAL on the details of the information she received from the director and teachers, including whether Dean was involved in any parent-teacher conferences, field trips, and other volunteering. The magistrate also sustained objections to questions concerning the information received by the GAL from Ash's friend and dentistry school classmate, Andrea Kline, to the effect that Ash, and not Dean, primarily took care of the child in the afternoon following preschool. The GAL, in her report, opined that the parties divided the child's care equally, and Ash's counsel

attempted to probe the GAL's conclusion, as well as her opinion that Ash was "overmanaging" the child, based on her conversations with daycare employees. (Sept. 3, 2013 Tr. Vol. I at 303.)

{¶ 43} Conversely, the magistrate uniformly (on grounds of hearsay) sustained objections by Dean's attorney to the questions about the GAL's inquiries. However, Ash's counsel made it clear at trial that he was not seeking to prove the truth of the matter asserted, but rather, to determine the basis for the information contained in the GAL's report. The daycare director, Sheri Lee, and the child's current teacher did testify at trial, as did Andrea Kline. In her objections, Ash specifically raised her claim that the magistrate misapplied the rule against hearsay, but the trial court made no mention of the issue in its decision.

{¶ 44} The role of the GAL is to "assist a court in its determination of a child's best interest." Sup.R. 48(B). The GAL is to provide the court with relevant information and "an informed recommendation" about the child's best interest. Sup.R. 48(D). *See also*, Loc.R. 27(G) of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch (responsibilities performed "[i]n order to provide the court with relevant information and an informed recommendation regarding the child's best interest"). As the Ninth District Court of Appeals has explained concisely:

> The intended purpose of the guardian ad litem gathering that information, however, is not to offer evidence to the court of the facts that she gathered but to explain the basis for her recommendation. In other words, when a guardian ad litem relays what a person told her, it is not for the purpose of establishing the truth of the matters relayed. Rather, it is for the purpose of describing the investigatory process of the guardian ad litem and the matters which may have influenced her opinion as to the best interests of a child.
>
> Given the guardian's role and the requirements that she explain her investigation and the basis for her recommendation, her report and testimony may necessarily include information about what other people told her. Those out-of-court statements do not become inadmissible "hearsay," however, unless they are "offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). For example, an out-of-court statement offered simply to prove that the statement was made is not hearsay. *State v. Gillespie*,

> 2d Dist. No. 24456, 2012 Ohio 1656, ¶ 54. Likewise, the statements do not constitute hearsay if they fall within a recognized exception to the hearsay rule. Evid.R. 801(D), 803, and 804(B); *McPherson v. Goodyear Tire and Rubber Co.*, 9th Dist. No. 21499, 2003 Ohio 7190, ¶ 12. *See also State v. McRae*, 8th Dist. No. 96253, 2011 Ohio 6157, ¶ 18; *State v. McGrapth*, 10th Dist. No. 11AP-117, 2011 Ohio 6130, ¶ 8-9 (Out-of-court statements offered by police officers and other investigators that simply explain the course of their investigation, such as why they decided to investigate a particular suspect, also fall outside the hearsay rule.). Similarly, a guardian ad litem is permitted to testify about out-of-court statements to explain the course of her investigation or explain why she reached her ultimate conclusion about the best interests of the children. *In re O.H.*, 2011 Ohio 5632, at ¶ 24.

*Sypherd v. Sypherd*, 9th Dist. No. 25815, 2012-Ohio-2615, ¶ 12-13.

{¶ 45} In *Sypherd*, the children's mother sought to admit out-of-court statements of the children and their teachers and school counselor, in order to prove the truth of what they said—that their school performance was suffering and they were under stress because they resided with their father for part of the school week. In the matter under review, Ash's counsel made it plain that statements by daycare personnel and Andrea Kline to the GAL were to clarify her investigation and the information she obtained from those witnesses for the purposes of her opinion and report.

{¶ 46} The majority finds no prejudice to Ash in being denied the right to cross-examine the GAL on these bases because of other testimony Ash was permitted to introduce at the hearing. But Ash's due process rights in the context of permanent custody are so critical as enunciated in *In re Hoffman,* 97 Ohio St.3d 92, 2002-Ohio-5368, syllabus, that she should have been permitted to cross-examine the GAL according to her stated purposes. And I trust that the trial court could properly distinguish between the GAL's testimony elicited in cross-examination to establish information which lay at the foundation of her report, and hearsay offered to prove the truth of any witness' statement regarding the relative involvement of the child's parents in the child's daycare and other activities. It is my view, that on remand, Ash should be permitted to examine the GAL on information she was given by daycare personnel, Andrea Kline and others, for

the limited purpose of ascertaining the basis for information contained in her report and opinion.  Accordingly, I would sustain Ash's fourth assignment of error.

{¶ 47} Ash's twelfth assignment of error concerns the trial court's refusal to accept additional evidence at the objection hearing on December 22, 2014.  Ash argues that:

> THE TRIAL COURT ABUSED ITS DISCRETION BY REJECTING APPELLANT'S REQUEST TO HEAR ADDITIONAL EVIDENCE ON OBJECTION.

{¶ 48} Although the magistrate had concluded her hearing on September 16, 2013, she did not file her findings of fact and conclusions of law until October 22, 2014, over 13 months later.  Ash proffered that, by that time, the two offers she had received for dental practice positions had been rescinded.  Additionally, by the time of the objection hearing, Ash no longer desired to return to Michigan.  Ash's previous intentions to relocate with the child to Michigan were of serious, if not paramount importance in the custody dispute.  At page seven of its decision, the trial court acknowledged that Ash had "notified the Court at the objection hearing that she no longer intended to relocate." (Feb 5, 2015 Decision and Entry at 7.) However, the trial court took no evidence on events subsequent to the magistrate's hearing and did not consider whether and how Ash's change of mind should affect the custody determination.

{¶ 49} Juv.R. 40(D)(4)(d) provides that in ruling on a party's objections, the court "may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."  While I can discern no attempt to supplement the record before the magistrate issued her decision, Ash claims that by the time it was issued she no longer had employment opportunities in Michigan and would no longer attempt to relocate with the child.

{¶ 50} The majority finds that Ash did not ask the trial court to hear additional evidence.  However, the trial court's duty under Civ.R. 53 on a magistrate's decision is to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53 (D)(4)(d).  The trial court should have independently considered the evidence Ash provided concerning the parties' employment, Ash's intentions regarding relocation and other matters which could not have been addressed prior to the magistrate's hearing.

*See In re M.L.E.,* 11th Dist. No. 2015-P-0007, 2015-Ohio-3647 (trial court can refuse to hear additional evidence unless objecting party can show it was not producible, even with reasonable diligence, prior to the magistrate's hearing).  This evidence did not arise and could not have been discovered prior to the magistrate's hearing, and the trial court was obliged to consider it in order to render a full and accurate decision regarding custody of the minor child in view of recent developments in the lives of the child's parents.

{¶ 51} The Ninth District Court of Appeals has succinctly explained the purpose and effect of Juv.R. 40(D)(4)(d):

> [W]hen objections have been filed, Juv.R. 40(D)(4)(d) provides:
>
> Before [ruling on objections], the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.
>
> "Thus, * * * although a court has discretion to refuse to consider new evidence, a court does not have discretion to refuse to consider new evidence if the objecting party demonstrates that it could not, with reasonable diligence, have presented the evidence to the magistrate." *Welch v. Welch*, 4th Dist. No. 12CA12, 2012 Ohio 6297, ¶ 12. *See also Johnson-Wooldridge v. Wooldridge*, 10th Dist. No. 00AP-1073, 2001 Ohio App. LEXIS 3319, 2001 WL 838986 (July 26, 2001). In such a case, the court is required to hear the new evidence.
>
> Accordingly, R.C. Chapter 2151 and the juvenile rules of procedure recognize that matters involving child custody are fluid and may change. Through these provisions, the trial court is kept informed of matters that may help to avoid unnecessarily inaccurate or outdated decisions. When making any modification of a dispositional order, the key consideration for the court is the best interest of the child. *In re G.R.*, 8th Dist. No. 83146, 2004 Ohio 999, ¶ 21. In assessing such a motion, a determination of the best interest of a child "can only be accomplished by considering all the evidence concerning [the child's] custodial placement." (Emphasis added.) Id. at ¶ 26.

*In re: A.S.*, 9th Dist. No. 26462, 2013-Ohio-1975, ¶ 8-10.

{¶ 52} In *A.S.*, the magistrate decided to grant legal custody to the child's maternal great-aunt and uncle, who later renounced their willingness to assume legal custody—after the magistrate's decision but before the juvenile court entered judgment. The child's father brought this change to the attention of the trial judge only one day later, and the judge delayed ruling on the father's objections pending a hearing at which the magistrate was expected to address the great-aunt and uncle's statements that they no longer wanted custody. However, no hearing took place before either the magistrate or the trial judge, who granted custody to the great-aunt and uncle without considering the reasons for their change in position.

{¶ 53} The Ninth District reversed and remanded for a further hearing, as I would under the circumstances. As further stated in *A.S.*:

> [A] trial court has the inherent authority to control its own docket and manage the cases before it. *Flynn v. Flynn*, 10th Dist. No. 03AP-612, 2004 Ohio 3881, ¶ 10, citing *Mayer v. Bristow*, 91 Ohio St.3d 3, 7, 740 N.E.2d 656 (2000). The trial court had authority to take additional evidence or return the matter to a magistrate for that purpose. Juv.R. 40(D)(4)(b). In exercising that authority, "the trial court's discretion must be exercised in a manner which best protects the interest of the child." *Flynn*, at ¶ 15, citing *Bodine v. Bodine*, 38 Ohio App.3d 173, 175, 528 N.E.2d 973 (10th Dist.1988).

*Id.* at ¶ 14.

{¶ 54} Ash's employment offers were rescinded in the year between the magistrate's hearing and her decision, and Ash represented to the court at the objection hearing that she no longer wished to return to Michigan. Although Ash may have addressed the matter differently with the trial court and perhaps raised her new intentions against relocation in advance of the objection hearing, her request that the trial court hear additional evidence should have been granted, and she should be entitled to present it on remand. A full examination of the factors affecting custody, including matters that have arisen since the hearing in September 2013 should be conducted and made available to the trial court before it makes a final determination on the custodial disposition of the child. There was no sound reason to ignore or delay consideration of that new evidence in order to serve the interests of the child.

{¶ 55} The trial court must "conduct a hearing or have the magistrate conduct a hearing so that the resulting evidence could be considered in making a fair and appropriate decision regarding a permanent custodial disposition."  *Id.* at ¶ 14.  The majority notes in its third footnote that the trial court is not precluded from taking additional evidence on remand.  I agree with this statement and respectfully suggest that the trial court take such additional evidence on remand, including Ash's present intention regarding relocation, prior to a final decision on custody for the child.  " '[A] court that considers child custody or visitation issues should be guided by the child's best interests, not a technical requirement that has the potential to actually negatively impact a child's best interests.' "  *Id.* at ¶ 15, quoting *Welch v. Welch*, 4th Dist. No. 12CA 12, 2012-Ohio-6297, ¶ 17.  In my view, the trial court should have heard or ordered a hearing by the magistrate on the new evidence of Ash's employment prospects and her claim that she no longer wished to relocate with the child.  Accordingly, I also would sustain Ash's twelfth assignment of error.

---